87 Ill.2d 56 (1981)
429 N.E.2d 501
In re J.W., a Minor, Appellee (The People of the State of Illinois, Appellant).
In re LOWELL CHATMAN, a Minor, Appellee (The People of the State of Illinois, Appellant).
Nos. 54256, 54636.
Supreme Court of Illinois.
Opinion filed November 20, 1981.
*57 Tyrone C. Fahner, Attorney General, of Springfield, and Edward Keefe and James T. Teros, State's Attorneys, of Rock Island (Herbert Lee Caplan, Melbourne A. Noel, Jr., Thomas E. Holum, and Neal B. Goodfriend, Assistant Attorneys General, and Jay D. Stein, law student, of Chicago, and John X. Breslin, of the State's Attorneys Appellate Service Commission, of Ottawa, of counsel), for the People.
Robert Agostinelli, Deputy Defender, and Stephen Omolecki, Assistant Defender, of the Office of the State Appellate Defender, of Ottawa, for appellee.
Tyrone C. Fahner, Attorney General of Springfield, and Richard M. Daley, State's Attorney, of Chicago (Melbourne A. Noel, Jr., and Thomas E. Holum, Assistant Attorneys *58 General, of Chicago, and Michael E. Shabat, Stephen Y. Brodhay, and Marcia B. Orr, Assistant State's Attorneys, of counsel), for the People.
Percival Harmon, of Washington, Kennon, Hunter & Samuels, of Chicago, for appellee.
Appellate court vacated; circuit court reversed; cause remanded. Order reversed; cause remanded.
MR. JUSTICE SIMON delivered the opinion of the court:
After finding Lowell Chatman, appellee in cause No. 54636, to be a delinquent minor, the circuit court of Cook County allowed his motion in arrest of judgment, deciding that it lacked jurisdiction. We permitted the State to appeal directly to this court under Rule 302(b) (73 Ill.2d R. 302(b)).
The issue is whether the juvenile court could properly hold an adjudicatory hearing without serving notice upon the minor's father by publication. The petition for adjudication of wardship identified the father as "unknown." The minor is illegitimate and seems to have had no contact whatever with his biological father. The record is unclear whether anyone knows who the father is; it is clear that no one knows where he is. The State did not attempt to serve notice by publication. The minor's mother was not formally served either, but she appeared at both the detention and adjudicatory hearings, she attended court every day of the proceedings, and she testified as a witness for her son. At the detention hearing, the minor was represented by the public defender; private counsel was then appointed and has represented the minor at all subsequent proceedings. At no time before or during the adjudicatory hearing did anyone object to the proceedings or demand publication of notice. The mother died after the adjudicatory hearing, and no father has yet been found.
The unknown father is a stranger to the minor. If alive, he knows nothing of the minor or of the facts to be *59 adjudicated. The minor could not reasonably repose in him any special trust or confidence. The minor has not suggested how the father's presence could have aided his defense, and the father's absence was not, therefore, unfair to the minor. The minor had the assistance of his mother, who was his only known parent and his sole custodian, as well as of legal counsel; the minor, the mother, and counsel all had adequate notice of the charges and an opportunity to defend against them. The failure to publish notice to the phantom father did not deprive the minor of liberty without due process of law, much less deprive the court of jurisdiction over the person of the minor.
The court, then, had jurisdiction of the subject matter and of the persons of the minor and his mother, but not of the person of the father. The father, although mentioned anonymously as a respondent in the petition for adjudication of wardship, was never properly made a party. For several reasons, however, he is not an indispensable party; it was proper to go forward with the delinquency proceedings in his absence.
The father is not being deprived of any substantial rights. Even if he still has, after years of abandonment, some parental rights or status, no one in the delinquency proceeding here at issue contemplates depriving him of them. If the minor is adjudged a ward of the court, his parents may lose custody; but the father does not have custody, never did have it, and at the time of the adjudicatory hearing had no prospect of getting it. Thus, the court could proceed without unfairly jeopardizing the interest of the absent father.
The minor, his mother, and the State all have vital interests at stake here, interests that overwhelm the speculative interest of the anonymous father. The minor, in particular, has a right to a speedy adjudicatory hearing. The father's absence should not prevent that adjudication or necessitate a time-consuming, expensive, and predictably *60 futile fiction of service by publication.
We note that determining the rights of those before the court in the absence of others whose interest might be impaired and by whom the judgment might later be attacked is not an unrecognized procedure in the law. Rule 19 of the Federal Rules of Civil Procedure, promulgated by the United States Supreme Court, allows for a pragmatic approach to the problem of necessary parties, and a mistake in the decision to proceed does not deprive the court of the power to adjudicate as between the parties before it. 28 U.S.C. Fed. R. Civ. P. 19, Notes of Advisory Committee on 1966 Amendments to Rules (1976); Annot., 21 A.L.R. Fed. 12 (1974).
We conclude that the facts of this case afford no grounds for considering the adjudicatory hearing and the finding of delinquency invalid, erroneous, or unfair.
The problem is that failure to give adequate notice to parents with a more significant relationship with the minor than the father in this case may be unfair to both the parent and the minor. Unquestionably, an adjudication of wardship without notice to parents may in some cases deprive both parent and child of liberty without due process of law (In re Gault (1967), 387 U.S. 1, 18 L.Ed.2d 527, 87 S.Ct. 1428), and be absolutely void (People ex rel. McEntee v. Lynch (1906), 223 Ill. 346). Unfortunately for courts, family relationships vary greatly, and a decision about whether to publish notice must be made early in the proceedings, without exhaustive investigation.
Fortunately, the question has been generally settled by statute. The Juvenile Court Act sets out the proper procedure for protecting the interests involved. Every parent, legal guardian, and custodian, or when necessary the nearest relative, must be named as a respondent in the case. (Ill. Rev. Stat. 1979, ch. 37, par. 704-1.) Each is to be individually served, if possible; if that is not feasible, service must normally be had by publication. (Ill. Rev. Stat. 1979, ch. 37, *61 pars. 704-3, 704-4.) Section 4-4, however, goes on to say that "[n]otice by publication is not required in any case when the person alleged to have legal custody of the minor has been served with summons personally or by certified mail, but the court may not issue any order or judgment against any person who cannot be served with process other than by publication unless notice by publication is given or unless that person appears." Ill. Rev. Stat. 1979, ch. 37, par. 704-4(2).
In this case, the minor's mother did not have legal custody of the minor, because their relationship was not defined by an order of court (Ill. Rev. Stat. 1979, ch. 37, par. 701-12). She did, however, maintain actual sole custody, and we think that is good enough. No court order was obtained simply because as the mother she had a prima facie right to custody which no one had ever challenged. An illegitimate father who has played no role in raising the minor cannot have any greater rights or be more important to the minor than a father who married the mother, lived in the family for a while, but at some point lost legal custody in a divorce or by other means. When someone not only does not share in the custody of the minor, but has so little contact with the minor that he does not learn of the minor's danger and cannot after diligent search be found, his interest is sufficiently slight that he should not be treated as an indispensable party; and the absence of such a comparative stranger does not deprive the minor of any substantial protection if the minor has the assistance of his custodian, the person on whom he relies for other important decisions in his life. The legislative decision that such respondents need not be served by publication is a sensible and fair way to draw the line between those who must be served and those who need not be, and we see no reason in policy to distinguish between cases of custody by court order and cases like this one of permanent exclusive actual custody by nature and default.
*62 The father being undiscoverable, notice to the custodial mother was enough. In fact, at oral argument the minor agreed that if his mother was properly served, section 4-4 excused publication to the unknown and therefore individually unservable father. The minor's argument before this court is that the mother had not been formally served either. But we do not read section 4-4 as demanding useless formality. The mother had actual notice of the charges against her son and the correlative threat to her own rights; she appeared in court and participated actively in the proceedings without objection. She thereby waived formal service of process and submitted to the jurisdiction of the court. The lack of formal service in no way prejudiced the minor or his mother. Considerations of fairness are all on the State's side: the respondents should not be permitted to have an adjudicatory hearing, hoping for a finding in their favor, and if they lose get a second chance by complaining of formal defects in service of process that could and should have been objected to immediately, could have been easily cured if timely objected to, and made no difference anyway.
There was no impropriety in holding the adjudicatory hearing without publication. The circuit court therefore erred in allowing the motion in arrest of judgment and vacating the finding of delinquency on that ground.
Ironically, however, publication will be necessary upon remand. This cause has not yet been disposed of. Additional proceedings must occur in the juvenile court, and the minor's mother is no longer there to stand with him. The minor's mother has died. He is no longer in her custody. Notice to and participation by her in the past is therefore no longer sufficient under section 4-4. In fact, the minor does not now appear to have any custodian or guardian. His father may be the only adult in the world from whom he can claim or hope for any loyalty or help whatever. Even a slight hope is better than nothing. Moreover, the court's *63 disposition of the minor may be influenced by whether there is any adult willing to take responsibility for him; and the father may be the only candidate.
The order of the circuit court in cause No. 54636 is reversed, and the cause is remanded for further proceedings.
In cause No. 54256, J.W., a minor, was sentenced to an indefinite term of probation by the circuit court of Rock Island County, and his probation was later revoked. The appellate court reversed the revocation, holding the juvenile court lacked jurisdiction due to the failure to notify the minor's father of the revocation proceeding. (89 Ill. App.3d 150.) After allowing the State's petition for leave to appeal, we decided in In re T.E. (1981), 85 Ill.2d 326, that judgments placing juveniles on probation for indefinite terms are void. This argument was made by the minor in the appellate court in this case, but because the appellate court disposed of the appeal on another ground, it did not reach this issue.
The minor has moved in this court for summary disposition of this appeal based upon our decision in In re T.E., and that motion was taken with the case. The appeal in cause No. 54256 is clearly controlled by In re T.E., and it is, therefore, unnecessary to reach the issue considered by the appellate court. Consequently, we vacate the judgment of the appellate court, reverse the judgment of the circuit court and remand this cause to the circuit court for further proceedings consistent with In re T.E.
54256 - Appellate court vacated; circuit court reversed; cause remanded.
54636 - Order reversed; cause remanded.