*In re* JOHN LAMB, Asserted to be a Person Subject to Involuntary Admission (The People of the State of Illinois, Petitioner-Appellee, v. John Lamb, Respondent-Appellant).

Second District    No. 2—89—1153

Opinion filed September 7, 1990.

INGLIS, J., specially concurring.
REINHARD, J., dissenting.

William E. Coffin, of Guardianship & Advocacy Commission, of Elgin, for appellant.

Gary V. Johnson, State's Attorney, of Geneva (William L. Browers and Marshall M. Stevens, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McLAREN delivered the opinion of the court:
Respondent John Lamb appeals from an order of the circuit court finding him to be a person subject to involuntary admission. Respondent raises two issues on appeal: (1) whether the trial court's order must be reversed because the State failed to follow provisions of the Mental Health and Developmental Disabilities Code (Mental Health Code) (Ill. Rev. Stat. 1987, ch. 91½, par. 1—100 *et seq.*); and (2) whether the State failed to prove by clear and convincing evidence that respondent was reasonably expected to inflict injury either on himself or on another. Because the State did not comply with statutory procedural requirements, we reverse the judgment of the circuit court.

On August 17, 1988, respondent, a 42-year-old male, was transferred from the Du Page County jail to the Elgin Mental Health Center (EMHC) because he was adjudicated unfit to stand trial. Respondent was arrested for violating an order of protection which prohibited him from having contact with his parents. Respondent had a history of threatening to kill his parents and burn down their house.

On December 1, 1988, the State filed the first petition for involuntary admission. The petition asserted that respondent was psychotic, delusional and grandiose. In addition, respondent was uncooperative with treatment and refused to take medication. His doctors described respondent as paranoid and having no insight into his condition. On December 9, 1988, the trial court ordered that respondent was subject to involuntary admission.

In the second petition, dated February 8, 1989, the State asserted that respondent had a history of failing to follow through with outpa-

tient treatment and had refused to be interviewed. This was his seventh involuntary admission since 1983. On February 2, 1989, respondent had become combative and had to be restrained. Respondent was diagnosed as a paranoid schizophrenic. In addition to the certificates of two health professionals from EMHC, the State also filed a treatment plan dated February 3, 1989. On February 14, 1989, respondent was again found to be a person subject to involuntary admission.

The State filed a third petition for involuntary admission on April 10, 1989. In addition to the petition, the State filed the two EMHC certificates and a treatment plan. The court, on April 28, 1989, found that respondent was subject to involuntary admission.

The next set of documents in the record is the subject of this appeal. On October 25, 1989, the State again filed the two EMHC certificates and a petition for involuntary admission. In addition, a notice to respondent of the hearing was also filed. The State did not file a treatment plan.

On October 27, 1989, the court held a hearing on the petition. Dr. Arturo Fogata, respondent's psychiatrist, testified that he evaluated respondent. According to Dr. Fogata, respondent had delusions of persecution and continually talked about being brought to the mental health center without a court order or witnesses. Respondent was argumentative and had a history of aggression. He was also found hoarding large straightened paper clips, a four-inch screw, a door stopper with a sharp edge, and a flat stone with a sharpened edge.

Dr. Fogata further testified that respondent did not follow aftercare treatment plans and did not take his medication. Respondent's last act of physical aggression was in April 1989, when respondent hit a staff member. Respondent had been forced to take medication and, since July 1989, had been voluntarily taking his medication and participating in the EMHC programs. Dr. Fogata was of the opinion that, if respondent was released, he would go into a cycle characterized by the failure to take medication and by aggression. Dr. Fogata based his opinion on respondent's pattern of noncompliance with outpatient treatment in conjunction with the onset of delusions after failure to take medication. Dr. Fogata believed that respondent could not provide for his basic needs and that he would again harass his parents if he were released. According to Dr. Fogata, the mental health center was the least restrictive environment for respondent.

Dr. Fogata also explained the treatment plan for respondent. Under the treatment plan, the mental health center would find respondent a place to stay so his outpatient treatment could be monitored. Dr. Fogata hoped that respondent would be placed in a community

service program within four to six months.

The trial court found that respondent suffered from a mental illness and, as a result of that illness, could reasonably be expected to inflict serious physical harm on himself or another. Respondent was therefore subject to involuntary admission, and EMHC was determined to be the least restrictive environment. Respondent timely filed his appeal.

■ Respondent first contends the order for involuntary admission must be reversed because it is apparent on the face of the record that certain provisions of the Mental Health Code were not followed. In support of this contention, respondent first argues that the State failed to follow the Code provisions when it served the notice of hearing on him. Section 3—706 of the Mental Health Code provides that the circuit court shall set a hearing date within five days after receipt of the second certificate and "[t]he court shall direct that notice of the time and place of hearing be served upon the respondent." (Ill. Rev. Stat. 1989, ch. 91½, par. 3—706.) Here, the State filed the notice of hearing at the same time as the certificates and the petition for involuntary admission. Thus, the State made two errors: first, the State, instead of the court, set the hearing date; and second, the State served the notice on respondent without the court's direction.

■ Respondent cites two cases for the proposition that where notice has been issued and served before the petition is filed and the hearing is set by the trial court, the order of involuntary admission must be reversed even though the respondent never objected to the improper service. (*In re Price* (1987), 152 Ill. App. 3d 960, 961-62; *In re King* (1986), 148 Ill. App. 3d 741, 746.) This court, following *Price* and *King*, reiterated the rule that "any noncompliance with statutory involuntary admission procedures renders an involuntary admission judgment erroneous and ineffective." *In re Splett* (1990), 194 Ill. App. 3d 391, 393.

The State argues, however, that we should reconsider our reliance on *Price* and *King* because those opinions are "ill-reasoned." According to the State, the lack of formal notice is "an empty formality." The State urges us to apply the rationale of *In re J.W.* (1981), 87 Ill. 2d 56, 62 (in a juvenile proceeding, formal notice may be considered waived where the interested parties have actual notice and participate in the proceedings) to involuntary commitment proceedings.

■ We disagree with the State's characterization that formal notice of the hearing is an empty formality. As we explained in *Splett*, the mandatory notice requirements of the statute are meaningful in protecting against the last-minute, oral notification of a possibly se-

dated, involuntarily committed respondent. *Splett*, 194 Ill. App. 3d at 393.

■ We also disagree with the State's assertion that the involuntary commitment procedure can be equated with a juvenile hearing. In a juvenile case, the court must hold a hearing within 120 days of a written demand for a hearing. (Ill. Rev. Stat. 1989, ch. 37, par. 805—14.) In addition, if the minor is adjudicated delinquent, the court may release the minor to the custody of his parents. (Ill. Rev. Stat. 1989, ch. 37, par. 805—23(1)(a)(1).) By contrast, in an involuntary admission proceeding, the hearing must be held within five days of the filing of the second certificate. (Ill. Rev. Stat. 1989, ch. 91½, par. 3—706.) If the court finds the respondent to be subject to involuntary admission and the least restrictive alternative for treatment is the mental health center, the court must order that the respondent remain hospitalized. (Ill. Rev. Stat. 1989, ch. 91½, par. 3—811.) In an involuntary admission proceeding, the time to prepare for the hearing is significantly shorter, and the liberty interest at stake is much more compelling than in a juvenile proceeding. Therefore, strict adherence to the statutory requirements of the Mental Health Code is necessary.

■ Respondent further argues that the judgment must be reversed because the State failed to file a treatment plan as required by section 3—813 (Ill. Rev. Stat. 1989, ch. 91½, par. 3—813). The State responds that the failure to file a treatment plan was not reversible error because a treatment plan was in effect for respondent.

A treatment plan formulated in April 1989 does not qualify as a "current" treatment plan for a hearing held in October 1989. The statute requires that "the facility director shall file with the court a current treatment plan which includes an evaluation of the patient's progress and the extent to which he is benefitting from treatment." (Ill. Rev. Stat. 1989, ch. 91½, par. 3—813.) The testimony at the hearing showed that respondent's condition had improved since the April hearing. Thus, the April treatment plan was not sufficient.

The State further asserts that the failure to file a current treatment plan is excused because Dr. Fogata testified about the treatment plan and the discharge plan. We recently held, in the context of section 3—810, that such cursory testimony is not a substitute for a treatment plan incorporated in a formal report. (*In re Blume* (1990), 197 Ill. App. 3d 552, 559 ("[T]he statute does not suggest that substantial compliance would be sufficient, and we cannot condone the failure to prepare and present a formal report which was intended to assist the trial court in making a disposition").) The failure of the State to file a formal report which was prepared by the facility direc-

tor or by a person directed to do so by the court results in an error which is neither harmless nor waived. *Blume*, 197 Ill. App. 3d at 558-59.

■ We conclude that the failure (1) to strictly follow the requirements for notification of the hearing and (2) to file a current treatment plan requires this court to reverse the judgment of the circuit court. In view of our disposition of these issues and the passage of time, we need not consider respondent's other appellate contention.

In conclusion, we are deeply disturbed with the recent trend of cases concerning involuntary admission at the Elgin Mental Health Center (EMHC). See *In re Hatala* (1990), 200 Ill. App. 3d 163; *In re Walker* (1990), 200 Ill. App. 3d 159; *In re Blume* (1990), 197 Ill. App. 3d 552; *In re Splett* (1990), 194 Ill. App. 3d 391.

The common link between each of these cases is that the State, for unknown reasons, has not followed the relatively simple procedures outlined in our Mental Health Code to keep potentially dangerous, mentally unstable persons in a facility where they can receive appropriate treatment without jeopardizing the public's safety. The Mental Health Code has sections dealing with notice of court proceedings to the patient (Ill. Rev. Stat. 1989, ch. 91½, par. 3—706), duration of the initial admission period and when a petition for an additional period of treatment must be filed (Ill. Rev. Stat. 1989, ch. 91½, par. 3—813), along with the need to include a current treatment plan with the petition (Ill. Rev. Stat. 1989, ch. 91½, par. 3—813(a)). These provisions are all very detailed given that liberty interests are involved in these cases. (See *In re Price* (1987), 152 Ill. App. 3d 960, 961.) The State must be willing to follow the statutory mandates in order to eliminate the possibility that dangerous persons will be released from the EMHC without first receiving the necessary treatment. The State may wish to implement a procedure whereby it files a petition to continue an involuntary admission well in advance of the expiration of the previous period, thus eliminating some of these "last-minute" problems.

The judgment of the circuit court of Kane County is reversed.

Reversed.

INGLIS, J., specially concurring:

I concur with the holding of the opinion filed in this case. I am also very disturbed with the recent trend of cases concerning involuntary admission at the Elgin Mental Health Center. I agree with Justice McLaren that something must be done to protect the public from

the release of potentially dangerous persons, without first receiving the necessary treatment, due to the State's failure to comply with statutory requirements.

I also note that I agree with Justice Reinhard's dissent in *In re Splett* (1990), 194 Ill. App. 3d 391, 394 (Reinhard, J., dissenting), *appeal allowed* (1990), 132 Ill. 2d 553. Although I agree with the dissent, I will follow the majority opinion in *Splett* pursuant to *stare decisis et non quieta movere*, at least until the supreme court decides the case. I do so in order to avoid further confusion in this difficult area.

JUSTICE REINHARD, dissenting:

For the reasons which I stated in *In re Splett* (1990), 194 Ill. App. 3d 391 (Reinhard, J., dissenting), *appeal allowed* (1990), 132 Ill. 2d 553, I continue to dissent from the holding that the failure of the record to show that notice of the time and place of the involuntary admission hearing was served on respondent and his attorney requires reversal of the commitment even where respondent and his attorney appeared at the scheduled hearing and did not raise any issue of the lack of proper notice.

I also dissent from the balance of the opinion which holds that the judgment must be reversed because the State failed to file a current treatment plan as required by section 3—813 of the Mental Health Code (Code) (Ill. Rev. Stat. 1989, ch. 91½, par. 3—813). Although the record does not show that a current treatment plan was formally filed in strict compliance with section 3—813 of the Code, the point was not raised below, and the transcript of Dr. Fogata's testimony at the commitment hearing indicates that a current treatment plan exists on which he was questioned by the assistant State's Attorney and defendant's counsel. While I do not approve of the failure to file formally the treatment plan, I would find there has been substantial compliance with the statute, and respondent has not suggested how he was prejudiced in these circumstances. *Cf. In re Smoots* (1989), 189 Ill. App. 3d 289, 292.

Finally, although not reached in the majority opinion, the respondent contends that the trial court's order for involuntary admission was not supported by clear and convincing evidence. On this record, I disagree and would affirm the order of commitment.