*In re* JACQUELYN LONG, Alleged to be a Person Subject to Involuntary Admission (The People of the State of Illinois, Petitioner-Appellee, v. Jacquelyn Long, Respondent-Appellant).

Second District   No. 2—89—1154

Opinion filed September 21, 1990.

William E. Coffin, of Guardianship & Advocacy Commission, of Elgin, and Sandra Kopels, of Legal Advocacy Services, of Chicago, for appellant.

Gary V. Johnson, State's Attorney, of Geneva (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McLAREN delivered the opinion of the court:

The respondent, Jacquelyn Margaret Ann Gardener Long, appeals the order of October 27, 1989, in which the circuit court found her to be a person subject to involuntary admission and ordered her hospitalized in the Department of Mental Health and Developmental Disabilities. The respondent contends that the order must be reversed because the State did not comply with the provisions of the Mental Health and Developmental Disabilities Code (Code) (Ill. Rev. Stat. 1989, ch. 91½, par. 1—100 *et seq.*) inasmuch as the respondent was not served with a notice of hearing set by the court, there was no current treatment plan on file with the court, and the trial court did not make specific findings of fact for the record. The respondent also contends the court's conclusion that she was a person subject to involuntary admission was not supported by the evidence in the record.

These proceedings were commenced on May 19, 1989, when Michael Long signed a petition in which he asserted the respondent was a person subject to involuntary admission, and the respondent was thereafter accepted for treatment. On October 16, 1989, Dr. Gross, a psychologist, filed a petition under section 3—813 of the Code (Ill. Rev. Stat. 1989, ch. 91½, par. 3—813), in which he alleged she continued to be a person subject to involuntary admission. He also alleged that she was a person who was mentally ill and who, because of her illness, was unable to provide for her basic physical needs so as to guard herself from serious harm and that she was in need of immediate hospitalization for the prevention of such harm. He further alleged that on October 13, 1989, she was told she would be taken to court on October 20, 1989, at the expiration of her previous court-ordered term and that she then demanded a form which she would not sign. Dr. Gross then stated that these events demonstrated her inability to take simple actions (*i.e.*, signing a form) or to understand what she needed to survive on her own.

The petition was filed with a certificate in which a ward physician stated his opinion that the respondent was a mentally ill person reasonably expected to inflict serious harm upon herself or another person in the near future and unable to provide for her basic physical needs. On October 17, 1989, a second certificate was filed in which a

board-certified psychiatrist stated that the respondent had been refusing to eat and had been losing weight and stated his opinion that she was unable to care for herself at that time.

On October 16, 1989, a notice of hearing was filed which contained a notice that a hearing would be conducted on October 20, 1989, at 9 a.m. The notice was not signed by the clerk of the court but by an employee of the medical records department. The notice included a certificate of service which the same medical records assistant signed and swore to that she served the notice on the respondent personally on October 16, 1989, as acknowledged by a notary public. The record does not contain any information regarding how October 20, 1989, was set as a hearing date.

On Friday, October 20, 1989, the matter was heard by the court. The State moved for a continuance because its witness was not present. The respondent, her attorney and her friend, Marilyn Weiss, were present. Ms. Weiss was the executive director of the Manic Depressive and Depressive Association, a support group of lay people, and had worked with the respondent to attempt to resolve the respondent's problems. She thought the respondent should be treated in an intermediate care facility. She also testified regarding the respondent's appearance and stated that she understood respondent's hesitancy in taking medication since they both had had toxic reactions to lithium in the past. The proceedings were then continued for the State to present its case.

On October 27, 1989, Dr. Peter Gallagher testified that the respondent suffered from a bipolar illness with psychotic features. In response to a question whether she could provide for her basic needs so as to guard herself from harm, the doctor answered it "would be a very problematic thing" and that "she would have difficulty negotiating reality." In response to the question whether she could take care of herself, the doctor answered that the medical charts stated that she had on a number of occasions refused to eat. He reported that as of October 16, 1989, she was taking the medication Haldone. The doctor believed that a treatment plan was in the file but was not aware of its provisions.

The respondent testified on her own behalf and stated that she could find employment and could reside with a church organization. She confirmed Ms. Weiss' statement that Ms. Weiss would help her. She stated that she did not want to take medication against her will and that the medication put her in a severe depression.

Following arguments by counsel, the court found that the respondent suffered from a mental illness, namely, the bipolar illness

with psychotic features. The court refused to consider her refusal to take medication as a ground to continue involuntary admission because it was a statutory right to refuse such drugs. The court then found that the State had met its burden of proof by presenting clear and convincing evidence that the respondent "as a result of the mental illness cannot provide for her own basic physical needs so as to guard herself from serious harm." The court initially intended to continue the proceedings until a current treatment plan was filed, but the State pointed out that a plan was filed October 5, 1989. After reviewing it, the court entered a finding that her admission to the Elgin Mental Health Center was the least restrictive environment suitable for her and then ordered her continued admission.

■ The respondent first contends the order for involuntary admission must be reversed because the provisions of the Code were not followed. The respondent specifically refers to the fact the court did not set the hearing date or direct the notice to be served. Section 3—706 of the Code (Ill. Rev. Stat. 1989, ch. 91½, par. 3—706) states that the court shall set the hearing and direct service of a notice after receipt of a second certificate or after a respondent is admitted to a facility, whichever is earlier. The respondent cites *In re Price* (1987), 152 Ill. App. 3d 960, 961-62, and *In re King* (1986), 148 Ill. App. 3d 741, 746, for the proposition that the order of involuntary admission must be reversed when the exact requirements of section 3—706, which states the court must set the hearing, are not met. The State acknowledges that the rule enunciated in *King* and *Price* controls this situation but requests us to reconsider the rule, in light of the fact that the respondent received actual notice four days in advance, there was a properly acknowledged certificate of service, the respondent was actually prepared and had obtained the presence of her attorney and her friend, and that no party objected to the notice. However, this court has recently reviewed the rule of *King* and *Price* and concurred that any noncompliance with the statutory admission procedures renders the involuntary admission judgment erroneous and ineffective. (*In re Splett* (1990), 194 Ill. App. 3d 391, 393, *appeal allowed* (1990), 132 Ill. 2d 553.) The requirements of the Code are not merely empty formalities but meaningful protections against potential abuses by the State. (194 Ill. App. 3d at 393.) We decline to reconsider the well-reasoned decisions of *King, Price* and *Splett*. See also *In re Lamb* (1990), 202 Ill. App. 3d 725, 728-29; *In re Clarke* (1990), 200 Ill. App. 3d 365, 368.

We note at this point that the respondent argues that the State is collaterally estopped from contesting the issue of improper notice.

However, since we have already decided the matter against the State on the ground of *stare decisis et non quieta movere* (see *Lamb*, 202 Ill. App. 3d at 728), it is not necessary to address this argument.

The State has filed a motion to strike the respondent's citation to an order rendered by this court under Supreme Court Rule 23 (107 Ill. 2d R. 23), and the respondent has filed an objection to the motion. We ordered that the motion and objection be taken with the case. Rule 23 provides that such orders are not precedential but may be invoked to support contentions of *res judicata* or collateral estoppel. It was unnecessary to address respondent's argument that the State was collaterally estopped from arguing that the notice provided to the respondent was ineffectual because the issue was resolved on the basis of *stare decisis*. Therefore, it is not necessary to refer to the Rule 23 opinion cited by the respondent because it is not relevant to any issue under consideration by this court. Therefore, the motion and the objection are moot.

Respondent next argues that the judgment must be reversed because the State failed to file a current treatment plan as required by section 3—813(a) of the Code (Ill. Rev. Stat. 1989, ch. 91½, par. 3—813(a)). The treatment plan in the record was filed October 5, 1989, but it was prepared on September 5, 1989. Thus, it was 41 days old at the filing of the petition and 45 days old at the time of the hearing. Treatment plans of a patient must be reviewed and updated as the clinical condition warrants but not less than every 30 days. (Ill. Rev. Stat. 1989, ch. 91½, par. 3—209.) Because a petition under section 3—813 requires the filing of a current treatment plan, and there was no current treatment plan on file, the trial court erred in granting the petition. (*In re Plank* (1988), 169 Ill. App. 3d 411, 415.) In addition, the State did not present any testimonial evidence which could have supplemented or updated the plan (see *In re Blume* (1990), 197 Ill. App. 3d 552, 558), and, in fact, the State's only witness was not even aware of what the plan provided.

The next contention relates to the finding that respondent, as a result of her mental illness, could not provide for her own basic physical needs so as to guard herself from serious harm. A person is subject to involuntary admission if he is mentally ill and because of the illness is unable to provide for his basic physical needs so as to guard himself from serious harm. (Ill. Rev. Stat. 1989, ch. 91½, par. 1—119(2).) The State has the burden of proving he was subject to involuntary admission by clear and convincing evidence. (Ill. Rev. Stat. 1989, ch. 91½, par. 3—808.) A trial court's decision deciding an involuntary admission proceeding is given great deference and will not be

set aside unless it is manifestly erroneous. (*In re Cutsinger* (1989), 186 Ill. App. 3d 219, 223.) The respondent contends that insufficient evidence was presented to support this conclusion. The State counters that the trial court erred by refusing to accept the respondent's refusal to take medication as a ground for continuing an involuntary admission. The Act provides that a patient may refuse medication. (Ill. Rev. Stat. 1989, ch. 91½, par. 2—107.) The refusal to take prescribed drugs may actually be a rational decision. (See *In re Orr* (1988), 176 Ill. App. 3d 498, 513.) Even if we accepted the State's argument that the refusal to take drugs could be held against her, there is no evidence in the record that the respondent did not make an informed and rational decision regarding the medication. Moreover, Dr. Gallagher did testify that the respondent had taken some medication as of October 16, 1989. In the cause before the court, the State's witness gave clear testimony, by way of opinion and specific facts, to support a conclusion that the respondent was mentally ill and in need of further institutionalization. Since the finding of the court was not manifestly erroneous, we determine that no error was committed as to this contention.

■ The last contention raised by the respondent alleged a violation of section 3—816 of the Code (Ill. Rev. Stat. 1989, ch. 91½, par. 3—816). The respondent claims that the trial court's order was not accompanied by a statement on the record of the court's finding of fact. At the end of the hearing, the court made the following statement:

"Now, focusing on the evidence that I have heard, the burden is on the petitioner and the burden of course is clear and convincing evidence.

I find that the petitioner has met that burden with respect to the mental illness; that being the bipolar illness with psychotic features.

I find also that the petitioner has met that burden with respect to showing that the respondent as a result of the mental illness cannot provide for her own basic physical needs so as to guard herself from serious harm.

\* \* \*

Having reviewed the treatment plan I will now enter the finding that this is presently the least restrictive environment for this respondent; and I will therefore, order her continued admission to this facility on an involuntary basis."

We determine that the court did make a statement on the record of the court's findings of fact and conclusions of law. See *In re Grimes* (1990), 193 Ill. App. 3d 119, 122-23.

■ In conclusion, we must remind the parties that the provisions in the Code are included to protect our society from the intrusions of government while still providing protection to society and its citizens who need help. These requirements are important safeguards to insure the mental health system does not become a tool to oppress, rather than to serve, society. The Code demands strict compliance with its procedural safeguards to justify the intrusive nature of the Code. (See *In re Lamb*, 202 Ill. App. 3d at 729.) The failure of the par*ties* to seek and force compliance at the trial court level does not serve either par*ty's* interests.

For the above reasons, the order of the circuit court of Kane County is reversed.

Reversed.

GEIGER and INGLIS, JJ., concur.