(No. 70016.—)

*In re* RICHARD SPLETT (The People of the State of Illinois, Appellant, v. Richard Splett, Appellee).

*Opinion filed March 21, 1991.—Rehearing denied June 3, 1991.*

CALVO, BILANDIC and HEIPLE, JJ., took no part.

Roland W. Burris and Neil F. Hartigan, Attorneys General, of Springfield, and Gary V. Johnson, State's At-

torney, of Geneva (Rosalyn B. Kaplan and Robert J. Ruiz, Solicitors General, and Terence M. Madsen and Thomas L. Ciecko, Assistant Attorneys General, of Chicago, and Kenneth R. Boyle, William L. Browers and Marshall M. Stevens, of the Office of the State's Attorneys Appellate Prosecutor, of Elgin, of counsel), for the People.

John B. Lower and William E. Coffin, of Elgin, for appellee.

CHIEF JUSTICE MILLER delivered the opinion of the court:

Following a hearing in the circuit court of Kane County, the respondent, Richard Splett, was declared to be a person subject to involuntary admission to a mental health facility, pursuant to the Mental Health and Developmental Disabilities Code (Ill. Rev. Stat. 1987, ch. 91½, pars. 1—100 through 6—107) (the Code). A divided panel of the appellate court reversed the involuntary admission order on the ground that the record failed to show that the respondent had received formal notice of the proceedings. (194 Ill. App. 3d 391.) We allowed the State's petition for leave to appeal (107 Ill. 2d R. 315(a)).

On March 7, 1989, respondent voluntarily admitted himself to the Elgin Mental Health Center. A month later, on April 6, 1989, the State filed in the circuit court of Kane County a petition seeking respondent's involuntary admission to a mental health facility. The next day, respondent and his appointed counsel appeared before the circuit judge for the scheduled hearing. In support of its petition, the State presented testimony of a psychologist and a board-certified psychiatrist. The experts concluded that respondent suffered from a bipolar disorder with psychotic features and posed a threat to himself and others. Respondent did not offer any evidence to

contradict the opinions of the State's witnesses, and asked only that he be transferred from the Elgin facility to a less restrictive environment. Respondent raised no. challenge to the validity of the proceedings.

At the conclusion of the hearing, the trial judge found that respondent was subject to involuntary admission pursuant to the Code. The judge explained that the evidence of respondent's mental illness and potential to inflict harm upon himself and others had been established by clear and convincing evidence. The judge also determined that the Elgin facility was the least restrictive environment suitable for the respondent.

The appellate court, with one justice dissenting, reversed the involuntary admission order. (194 Ill. App. 3d 391.) The majority held that the commitment order was ineffective, reasoning that the State failed to comply with the notice requirements of section 3—706 of the Code (Ill. Rev. Stat. 1987, ch. 91½, par. 3—706). The court interpreted that provision as requiring an affirmative showing that respondent received formal notice of the proceeding. The dissenting justice believed that, in the present case, respondent had waived any objection to the State's asserted failure to comply with the statutory notice requirements, noting that respondent and his attorney appeared at the hearing yet failed to allege any deficiency in the notice they received. 194 Ill. App. 3d at 395 (Reinhard, J., dissenting).

Although the order requiring respondent's involuntary admission was reversed by the appellate court, respondent remained in a mental health facility for more than a year after the appellate court's decision. Respondent was eventually released in November 1990, shortly before this court heard oral arguments in the present matter. Review is nonetheless appropriate, as the collateral consequences related to the stigma of an involuntary admission may confront respondent in the future.

(See *In re Hays* (1984), 102 Ill. 2d 314, 317; *People ex rel. Craine v. Boyd* (1976), 41 Ill. App. 3d 538, 539.) In addition, a resolution of the merits of the case may "relieve existing uncertainties and contribute to the efficient operation of our system of justice." *In re Stephenson* (1977), 67 Ill. 2d 544, 550.

As we have noted, the appellate court reversed the commitment order entered in the present case, finding that the State failed to comply with the statutory notice requirements. We affirm the judgment of the appellate court, but for reasons not discussed in that opinion. We believe that the commitment order was erroneous because respondent was not eligible for involuntary admission under the Code, an alternative argument made by respondent before both the appellate court and this court.

In the case before us, the appellate court found that the State failed to satisfy the notice requirements of section 3—706, applicable to involuntary admissions upon court order. Section 3—706 states:

> "The court shall set a hearing to be held within 5 days, excluding Saturdays, Sundays and holidays, after its receipt of the second certificate or after the respondent is admitted to a mental health facility, whichever is earlier. The court shall direct that notice of the time and place of hearing be served upon the respondent, his attorney, and guardian, if any, his responsible relatives, and the facility director of the facility. Unless the respondent is admitted pursuant to Section 3—704, he may remain at his residence pending the hearing. If, however, the court finds it necessary, it may order a peace officer or another person to have the respondent before the court at the time and place set for hearing." Ill. Rev. Stat. 1987, ch. 91½, par. 3—706.

The record here does not show that respondent was formally served with notice of the time and place of the commitment hearing. The State filed a notice of hearing

form with the clerk of the circuit court on April 6, 1989. The form stated that the matter would be called for a hearing on April 7, 1989, and specified the time and location of the hearing. The portion of the form used to indicate return of service was left blank, however. The parties agree that the record fails to show that respondent was served with formal notice of the involuntary admission proceedings.

In the present case, the appellate court construed section 3—706 of the Code as requiring affirmative proof in the record that respondent received formal notice of the involuntary admission proceedings. The court reasoned that strict compliance with the notice provisions of section 3—706 is necessary to protect the liberty interests at stake in civil commitment proceedings. In support of its holding, the court relied on other appellate court decisions that had reached the same result in similar circumstances. (See *In re Price* (1987), 152 Ill. App. 3d 960; *In re King* (1986), 148 Ill. App. 3d 741.) The court expressly declined to follow a decision under prior law that held that noncompliance with an analogous commitment provision was waived when respondent failed to raise an appropriate objection during the commitment hearing. See *People v. Williams* (1977), 47 Ill. App. 3d 861, 866-67.

We agree with the appellate court that the relevant statutory notice provisions serve an important function. Involuntary admission proceedings, which are founded on society's obligation to protect and care for those who are unable to protect or care for themselves, implicate a person's liberty interests. (*Stephenson*, 67 Ill. 2d at 554.) At the same time, however, we do not believe that an involuntary admission order must automatically be deemed invalid if the record fails to contain affirmative proof that respondent received formal notice of the proceedings. When it is evident that a respondent received ac-

tual notice of the proceeding against him, then a commitment order, based upon clear and convincing evidence and issued by a circuit court after a hearing on the merits, may be deemed proper in an appropriate case even though the record does not demonstrate that respondent received formal notice as well.

This court discussed a related question in *In re J.W.* (1981), 87 Ill. 2d 56. In that case, a proceeding under the Juvenile Court Act, the minor's mother was not served with her child's delinquency petition in a manner that complied with the relevant statutory requirements. The mother did appear at the delinquency hearing, however, and she participated in the proceedings without objecting to the lack of formal notice. The court held that the mother's actual notice of the proceedings was sufficient in those circumstances. The court explained:

> "The minor's argument before this court is that the mother had not been formally served either. But we do not read section 4—4 as demanding useless formality. The mother had actual notice of the charges against her son and the correlative threat to her own rights; she appeared in the court and participated actively in the proceedings without objection. She thereby waived formal service of process and submitted to the jurisdiction of the court. The lack of formal service in no way prejudiced the minor or his mother." (*J.W.*, 87 Ill. 2d at 62.)

The court also observed that the minor and his mother should not be permitted to take part in a hearing on the merits and, if they do not prevail, obtain a new hearing by complaining of a procedural defect "that could and should have been objected to immediately, could have been easily cured if timely objected to, and made no difference anyway." *J.W.*, 87 Ill. 2d at 62.

We believe that the same considerations are applicable here. It is evident that the purposes of section 3—706 were satisfied in this case by respondent's actual

knowledge of the proceedings, and we do not construe the statute as requiring the performance of an empty formality when the legislative intent has been otherwise achieved. Respondent was present at the hearing and was represented by counsel. The attorney answered ready, cross-examined the State's witnesses, and argued the merits of the case. At no time did respondent or his attorney raise any challenge to the sufficiency of their notice of the proceeding, or request that the matter be continued. The notice given to respondent and his attorney, whether or not affirmatively memorialized in the record, afforded them the time to prepare for the proceeding and allowed them an opportunity to be heard on the disposition of the matter. Respondent does not contend that he was prejudiced by the lack of formal notice, nor do we discern any manner in which his rights were adversely affected. Thus, contrary to the view of the appellate court, we do not believe that the absence in the record of an affirmative indication that respondent received formal notice of the proceeding compels reversal of the admission order. As in *J.W.*, we conclude here that the purposes of the notice provision were fulfilled, and that the absence of an affirmative indication in the record that respondent was properly served with formal notice of the time and place of the proceeding must be considered harmless.

As an alternative ground for relief, respondent contends that he was not eligible for involuntary admission because he never submitted a written request seeking his discharge from the mental health center to which he had voluntarily committed himself, as the statute requires. The respondent raised the same argument in the appellate court, but the issue was not decided there, in light of the court's favorable disposition of respondent's first claim of error. Contrary to the State's contention, the appellate court's failure to specifically address this

additional question does not prevent the respondent from arguing it here. As the appellee before this court, respondent may raise this additional issue in support of the appellate court judgment and, in the interest of judicial economy, we shall now consider it. See *People v. Furby* (1990), 138 Ill. 2d 434, 453; *cf. Dineen v. City of Chicago* (1988), 125 Ill. 2d 248, 265 (appellant may not later introduce issues not originally presented in petition for leave to appeal).

Section 3—403 of the Code sets out a voluntary patient's right to be discharged from the mental health facility to which the patient has admitted himself. The provision states:

> "A voluntary patient shall be allowed to be discharged from the facility at the earliest appropriate time, not to exceed 5 days, excluding Saturdays, Sundays and holidays, after he gives any treatment staff person written notice of his desire to be discharged unless he either withdraws the notice in writing or unless within the 5 day period a petition and 2 certificates conforming to the requirements of paragraph (b) of Section 3—601 and Section 3—602 are filed with the court. Upon receipt of the petition, the court shall order a hearing to be held within 5 days, excluding Saturdays, Sundays and holidays, and to be conducted pursuant to Article IX of this Chapter. Hospitalization of the patient may continue pending further order of the court." Ill. Rev. Stat. 1987, ch. 91½, par. 3—403.

In *In re Hays* (1984), 102 Ill. 2d 314, 319, this court determined that under section 3—403, involuntary commitment proceedings may not be brought against a voluntarily admitted patient unless the patient has already submitted a request for discharge. The court stated that compliance with that rule was necessary to effectuate one of the purposes of the Code, the encouragement of voluntary admissions. As *Hays* noted, a patient who voluntarily undertakes therapy is more likely to be rehabili-

tated than one who is involuntarily required to undergo treatment. (*Hays*, 102 Ill. 2d at 319.) An important means of encouraging voluntary submission to treatment is to guarantee voluntary patients the right to request their discharge. *Hays*, 102 Ill. 2d at 320.

The record in the present case fails to show that respondent ever submitted a written request for discharge. The only reference in the record to a request by respondent for discharge appears in the certificate of one of the doctors, who stated that the respondent had "requested his discharge." As we explain below, we do not believe that such evidence is a sufficient substitute, under the Code, for a patient's own written request for discharge.

The Code requires that a voluntary patient's request for discharge be in writing. Section 3—401 provides that a voluntary patient "may be discharged from the facility at the earliest appropriate time, not to exceed 5 days, excluding Saturdays, Sundays, and holidays, after giving a written notice of his desire to be discharged" (Ill. Rev. Stat. 1987, ch. 91½, par. 3—401(b)). Similar language is found in section 3—403, which provides, "A voluntary patient shall be allowed to be discharged from the facility at the earliest appropriate time, not to exceed 5 days, excluding Saturdays, Sundays and holidays, after he gives any treatment staff person written notice of his desire to be discharged" (Ill. Rev. Stat. 1987, ch. 91½, par. 3—403). Because these two provisions expressly state that a respondent's request for discharge must be in writing, we do not believe that an oral request is sufficient under *Hays* to activate the statutory requirements for initiating an involuntary admission proceeding. See *In re Macedo* (1986), 150 Ill. App. 3d 673, 676.

Thus, the State may alter a voluntarily admitted patient's status only after the patient has submitted a written request for discharge. In this way the provisions of

the Code assure a voluntarily admitted patient that his initial decision to submit to treatment will not be transformed into an involuntary commitment. (*Macedo*, 150 Ill. App. 3d at 676.) Because the record in the present case fails to show that respondent had submitted an effective request for discharge prior to the State's initiation of involuntary admission proceedings, we conclude that, under *Hays*, the involuntary admission order must be considered invalid.

Respondent made no objection at the hearing to the State's initiation of involuntary admission proceedings in advance of a written request by respondent for discharge. We do not believe, however, that respondent's argument has been waived. The State does not argue that respondent defaulted on this issue by failing to present an appropriate objection in the circuit court. Accordingly, the State itself may now be deemed to have waived any objection to our consideration of the merits of the question. See *People v. Holloway* (1981), 86 Ill. 2d 78, 91.

We note that in *Hays* respondent had also failed to raise any objection in the circuit court to the State's premature initiation of involuntary admission proceedings. In that case the appellate court determined that the involuntary admission order was void, and thus subject to challenge, notwithstanding the respondent's failure to make a timely objection. (See *In re Hays* (1983), 115 Ill. App. 3d 686, 689 ("no necessity exists to challenge a void order in order to preserve the point on appeal").) This court's opinion in the case, though it affirmed the appellate court's judgment, did not expressly discuss the waiver issue. See *Hays*, 102 Ill. 2d at 317 ("The single question presented is whether a petition for involuntary commitment of a voluntarily admitted patient may properly be brought when the patient has not made a request to be discharged").

Our disposition of the present case is consistent with the holding in *Hays* and with that opinion's construction of the relevant statutory provisions. Although, as we have found, proof of formal notice of the proceeding may be excused when circumstances demonstrate that actual notice is sufficient, we believe that strict compliance must be had with the requirements of the Code governing a patient's eligibility for involuntary admission. Section 3—403 is designed to protect a voluntarily admitted patient from losing control over his status, and we believe that the legislature intended that the requirements of the statute be adhered to strictly. Reversal of an involuntary admission order for failure to comply with that provision would simply restore the patient to his original status.

For the reasons stated, the judgment of the appellate court is affirmed.

*Judgment affirmed.*

JUSTICES CALVO, BILANDIC and HEIPLE took no part in the consideration or decision of this case.