*In re* PAUL MURPHY, a Person Found Subject to Involuntary Admission (The People of the State of Illinois, Petitioner-Appellee, v. Paul Murphy, Respondent-Appellant).

Second District   No. 2—89—1323

Opinion filed May 24, 1991.—Rehearing denied June 27, 1991.

William E. Coffin, of Guardianship & Advocacy Commission, of Elgin, Thomas J. Carlisle, of Guardianship & Advocacy Commission, of Springfield, and Jeff Plesko and Penelope Karnes, both of Legal Advocacy Service, of Carbondale, for appellant.

Gary V. Johnson, State's Attorney, of Geneva (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE BOWMAN delivered the opinion of the court:

Respondent, Paul Murphy, appeals from an order of the circuit court of Kane County for his involuntary admission to Elgin Mental Health Center (Center). He contends the order is void for failure to comply with statutory requirements regarding notice and treatment information.

On November 30, 1989, pursuant to requirements of the Mental Health and Developmental Disabilities Code (Code) (Ill. Rev. Stat. 1987, ch. 91½, par. 1—100 *et seq.*), a petition and two psychiatrists' certificates were executed for the purpose of securing the involuntary admission of respondent to a mental health facility. (Ill. Rev. Stat. 1987, ch. 91½, pars. 3—701, 3—702.) That same day a notice of hearing was prepared and served on respondent, who was residing at the

Center as the result of a prior involuntary admission, by an employee of the Center. The next day, December 1, 1989, the petition, certificates and notice of hearing were filed with the clerk of the Kane County circuit court.

Respondent and his counsel appeared at the hearing held on December 8, 1989. At the beginning of the proceedings the court asked if there was any issue regarding timeliness of the petition or notice. Counsel for respondent answered, "I don't believe so, Judge." The State then called Dr. Nicola, a psychiatrist who had examined respondent, as its first and only witness.

Dr. Nicola testified that respondent suffered from schizoaffective disorder manifesting itself in grandiose delusions, periods of agitation, and occasionally in acting out toward other people. The doctor described respondent's mistaken belief that he had a wife in Dallas and that he had had special contact with Germans, which resulted in his getting a bank account in an Illinois bank. Also, since the beginning of November 1989, respondent had exhibited agitation and/or physical aggression on six occasions. Twice he knocked other patients to the floor, and one time he started a fight with another patient.

In Dr. Nicola's opinion respondent was reasonably expected to inflict serious physical harm upon himself or another in the near future and was unable to provide for his basic physical needs so as to guard himself from harm. The doctor described respondent's contact with reality as "seriously impaired," sometimes even as to who people are and what their intentions toward him may be, and indicated that when he would misinterpret, he would be likely to act out. Respondent's treatment plan and treatment goals were addressed by the witness, and, finally, Dr. Nicola testified that the Center would be the least restrictive environment for respondent since he was not able to cooperate and was "unstable and explosive with almost any kind of provocation."

Respondent testified on his own behalf. He acknowledged that he had not become stabilized and did not know how he was going to get out of the Center. Much of his initial testimony was rambling and not responsive to counsel's questions. However, he did indicate that he felt like he was doing better and that he was taking his medication regularly. He thought he would not hurt himself or anyone else.

The court found that the State had proved by clear and convincing evidence that respondent continued to be a person subject to involuntary admission. After also finding that the Center would be the least restrictive environment for respondent, the court ordered his admission to the facility.

■■■ Respondent first challenges the validity of the court's order on the ground that he did not receive proper notice of his involuntary admission hearing. Section 3—706 of the Code (section 3—706) (Ill. Rev. Stat. 1987, ch. 91½, par. 3—706) requires the court to set a hearing on petitions for involuntary admission and to direct that notice of the time and place of the hearing be served upon respondent. The record reflects that in this case notice was served the day *before* the petition and certificates, which initially invoked the aid of the court, were filed. Accordingly, notice could not have been given at the direction of the court. Respondent posits that, even though he was actually served and appeared at the hearing with counsel, the service of notice did not comport with the statutory requirements and, therefore, the order for his involuntary admission must be reversed.

An issue similar to the one raised here was recently addressed by our supreme court in *In re Splett* (1991), 143 Ill. 2d 225. In *Splett* the record did not affirmatively show that respondent had been served with formal notice of his admission hearing, as required by section 3—706. Respondent had, however, appeared at the hearing accompanied by counsel and had not asserted that notice was deficient. Nevertheless, the order for respondent's involuntary admission was reversed by this court on the ground that there had not been strict compliance with the Code. (See *In re Splett* (1990), 194 Ill. App. 3d 391.) On appeal to the supreme court the appellate court decision was affirmed on other grounds. However, in the course of its opinion the supreme court construed section 3—706 in order to resolve the question of whether strict compliance with the statutory notice requirements is necessary for a valid involuntary admission order.

The *Splett* court indicated that where it is evident a respondent received actual notice of an involuntary admission hearing, a commitment order based on clear and convincing evidence, issued after a hearing on the merits, may be considered proper despite the failure of the record to demonstrate that respondent received formal notice. After pointing out that the purposes of section 3—706 were satisfied by respondent's actual knowledge of the hearing, the court refused to construe the statute as "requiring the performance of an empty formality when the legislative intent has been otherwise achieved." (*Splett*, 143 Ill. 2d at 232.) The actual notice given to respondent was sufficient to meet the purposes of section 3—706 since it gave respondent and his attorney time to prepare for the hearing and an opportunity to be heard in the disposition of the matter. The court focused on respondent's appearance at the hearing and his representation by counsel who answered ready, cross-examined wit-

nesses, and argued the case. Too, neither respondent nor counsel objected to the sufficiency of notice or requested a continuance. Nor did respondent contend that he was prejudiced by the lack of formal notice. Accordingly, the absence of proof that respondent was properly served with formal notice of the hearing was considered by the court to be harmless.

The case under consideration here differs from *Splett* in that it is not disputed that respondent was served with notice of his hearing. Rather, notice is attacked only because it was not given at the direction of the court as is called for in section 3—706. However, respondent appeared at the hearing and was represented by counsel. When specifically asked by the court, prior to the start of the hearing, counsel indicated that she did not believe there was any issue regarding timeliness of the petition or notice. Counsel did not at any subsequent time challenge the sufficiency of notice or request a continuance in order to better prepare for the proceeding. On the contrary, while she declined to cross-examine the State's witness, she did complete a direct examination of respondent. We think it fair to conclude from these facts that the notice served on respondent gave him and his counsel adequate time to prepare for the commitment hearing and certainly provided them with an opportunity to be heard in regard to the ultimate resolution of the petition. Respondent does not claim that he was prejudiced by less than perfect service of notice, and the record does not reveal to us any infringement of respondent's rights.

Under these circumstances we think, as it was expressed in *Splett*, that the legislative intent of section 3—706 was achieved and that to invalidate a commitment order merely because service was not directed by the court would be to require "the performance of an empty formality." (*Splett*, 143 Ill. 2d at 232.) If anything, the case for upholding the commitment order is even stronger here than in *Splett*. This record, unlike that in *Splett*, affirmatively shows that respondent was served with notice. The sole problem is that notice was accomplished before the court had a chance to so direct. Under *Splett*, this flaw is not enough to trigger reversal of the order for respondent's involuntary commitment.

Respondent next contends that the commitment order is void because the commitment proceedings did not comply with statutory provisions pertinent to information on treatment for his illness. Section 3—810 of the Code (section 3—810) (Ill. Rev. Stat. 1987, ch. 91½, par. 3—810) provides that prior to disposition of a petition for involuntary admission a report is to be prepared regarding alternative treatment settings, a social investigation of the respondent, and a prelimi-

nary treatment plan. The report is to be considered by the court in determining an appropriate disposition. Section 3—813(a) (Ill. Rev. Stat. 1987, ch. 91½, par. 3—813(a)) provides that when a petition is filed for the continued involuntary admission of a patient in a mental health facility, a current treatment plan is to be filed also. Neither a section 3—810 predisposition report nor a formal section 3—813(a) current treatment plan can be found in the record.

Respondent asserts that the absence of the report and treatment plan reflects a lack of statutory compliance which warrants reversal of the order for his involuntary admission. The State responds that the record reflects substantial compliance with the statute and the lack of any formal documents is harmless error. We will address first the parties' contentions regarding section 3—813(a).

Section 3—813(a) specifically states that if a petition for continued involuntary admission is filed "the facility director shall file with the court a current treatment plan which includes an evaluation of the patient's progress and the extent to which he is benefiting from treatment." (Ill. Rev. Stat. 1987, ch. 91½, par. 3—813(a).) Section 3—813 also provides for additional periods of involuntary treatment for "so long as the patient continues to be subject to involuntary admission." (Ill. Rev. Stat. 1987, ch. 91½, par. 3—813(b).) It is apparent from a consideration of section 3—813 as a whole that one of its purposes is to ensure that patients repeatedly admitted without their consent receive the kind of care and treatment they need on a continuing basis. The language of section 3—813(a) requiring the filing of a treatment plan helps to achieve that purpose by providing a mechanism whereby the court can, first, ascertain that ongoing treatment has actually been delineated for each admittee and, second, verify and evaluate any treatment which has been given. In short, the statutory language helps both to define and facilitate the court's ongoing supervision of the care, treatment, and progress of patients repeatedly admitted against their will.

The State points out that Dr. Nicola testified to the existence and contents of a comprehensive treatment plan and that the record contains a report entitled "Monthly Review of the Comprehensive Treatment Plan" which was filed on January 16, 1990, over a month after respondent's hearing. On these facts the State argues that the purpose of section 3—813(a) was fulfilled and urges us to find compliance with the statute. This we cannot do.

Section 3—813(a), dealing as it does with repeat admissions, provides some measure of assurance that a patient receives ongoing treatment and that his progress is monitored and evaluated by an ob-

jective court. In other words, section 3—813(a) represents an attempt to prevent patient neglect. The only way the court can fulfill this important oversight function is to have available for review, first of all, written verification that a treatment plan has in fact been, and continues to be, in place. Even more significantly, there is little way the court can monitor a patient's progress or the results of his treatment unless the plan called for by section 3—813(a) is made part of the record each time the patient's hospitalization is continued. It is well known that some patients remain in mental health facilities for long periods of time. Section 3—813(a) protects these patients by mandating that their records be constantly updated and filed with the court in order that they can be reviewed. In this regard we note that section 3—209 of the Code (Ill. Rev. Stat. 1987, ch. 91½, par. 3—209) requires that a patient's treatment plan be reviewed and updated as the patient's condition warrants, but not less than every 30 days. Assuming a treatment plan is maintained in accord with section 3—209, there should be little difficulty in filing a current plan at the same time a petition is filed for a patient's readmission.

In the instant case, the report cited by the State was filed on January 15, 1990, far too late to be of any assistance to the trial court in making an evaluation of respondent's progress. While Dr. Nicola's testimony may have helped the trial court during this particular readmission hearing, such testimony would not normally be filed as part of the court record and, thus, would not be available for review by a future court at a future admission hearing. In the absence of a properly filed treatment plan we cannot say the purpose of section 3—813(a) has been fulfilled. Nor, in light of the importance of the treatment plan as a tool for future evaluations, can we say that respondent has not suffered any prejudice due to the lack of a plan. We conclude that the failure to comply with section 3—813(a) warrants reversal of the order for respondent's involuntary admission to a mental health facility. See also *In re Long* (1990), 203 Ill. App. 3d 357, 362; *In re Lamb* (1990), 202 Ill. App. 3d 725, 729-30.

Since we have decided that the disputed order must be reversed due to its failure to comply with section 3—813(a), we need not address respondent's challenge based on section 3—810.

In accord with the reasons set forth above, the order of the circuit court of Kane County is reversed.

Reversed.

NICKELS and INGLIS, JJ., concur.