*In re* PHILLIP ROBINSON, a Person Found Subject to Involuntary Admission (The People of the State of Illinois, Petitioner-Appellee, v. Phillip Robinson, Respondent-Appellant).

Second District   No. 2—90—0482

Opinion filed May 24, 1991.

Guardianship & Advocacy Commission, of Elgin (William E. Coffin, of counsel), for appellant.

Gary V. Johnson, State's Attorney, of Geneva (William L. Browers and Marshall M. Stevens, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE REINHARD delivered the opinion of the court:

Following a hearing in the circuit court of Kane County, respondent, Phillip Robinson, was declared to be a person subject to involuntary admission to a mental health facility pursuant to the Mental Health and Development Disabilities Code (Code) (Ill. Rev. Stat. 1989, ch. 91½, pars. 1—100 through 6—107).

Respondent appeals and raises the following issues: (1) whether respondent was served with notice of the hearing as required by statute pursuant to valid court direction; (2) whether, contrary to the stat-

utory requirement, the facility director did not prepare and the trial court did not consider a dispositional report; (3) whether, contrary to the statutory requirement, the trial court failed to specify the least restrictive, determinative period of respondent's involuntary hospitalization; and (4) whether there was clear and convincing evidence that respondent was a person subject to involuntary admission.

On April 6, 1990, respondent was involuntarily admitted to the Elgin Mental Health Center. On that day, a doctor completed a certificate for respondent's admission. A second certificate was completed and filed later that day. On May 6, 1990, a medical records assistant, Phyllis Malone, filed an affidavit of proof of service of a notice of a hearing which was served on J. Mackeben, R.N. On the same day, Phyllis Malone served a notice of hearing on Phillip Robinson and J. Mackeben, R.N. The notice of hearing stated that the hearing was to be held on April 12, 1990. The hearing was set pursuant to the procedures provided in section 3 of Kane County general order 90—1. At 1:02 p.m. on April 6, 1990, the petition, certificate, affidavits, notices of hearing and rights of recipients were filed in the circuit court of Kane County. The second certificate was filed on April 9, 1990.

On April 12, 1990, the Kane County circuit court held a hearing on the petition to involuntarily admit respondent. The trial judge prefaced the hearing by noting that "[t]he ordering of service, the setting of the matter for hearing, and the appointment of the Public Defender [were] done pursuant to Kane County Administrative Order 90—1." Section 6 of general order 90—1 states the following:

> "Section 6. Pursuant to Chapter 91½ sections: 3—509, 3—611, 3—901, 4—307 and 4—407 it is hereby ordered that the Department of Mental Health and Developmental Disabilities through the Facility Director at the facility where the respondent is residing shall be responsible for insuring that notice is sent as required under the relevant statutes (to those persons entitled to notice) and shall provide actual notice until such time as pursuant to §3—201 a form is developed with permits sufficiently reasonable generation of the notice with the Circuit Clerk."

The court then asked the public defender the following questions, and she gave the following answers:

> "Q. Ms. Soule, is there any issue here as to the validity of the service?
>
> A. No, Judge.
>
> Q. Is there any issue as to the timeliness of this hearing?
>
> A. No.

Q. Have you had an adequate opportunity to prepare?

A. Yes."

The only witness to testify for the State was Dr. Teresita Arcinas. The parties stipulated to her qualifications as an expert in the field of psychiatry. Dr. Arcinas' opinion was that respondent was suffering from mental illness, specifically, an adjustment disorder with disturbance of conduct and emotion. She defined "adjustment disorders" as a maladaptive reaction to psychosocial "stressors" which in this case were family, business and alcohol problems. Respondent's symptoms included irritability, impulsivity, threats and mild depression. Dr. Arcinas also stated that respondent told her that, when he becomes angry, he verbally threatens the family, leaves, and then becomes intoxicated. He told her that he thought about suicide and ran into a busy street prior to his admission. She also said that respondent had been in two fights recently and had bruises and contusions on his head. She also testified that respondent had repeatedly threatened his wife who, being afraid of him, obtained a restraining order for protection. Dr. Arcinas opined that she reasonably expected respondent to inflict serious physical harm upon himself or another in the near future. Although no treatment plan was filed with the court, Dr. Arcinas stated there was a written plan "spelling out our goals." She outlined a treatment plan in which she would, first, get respondent and his wife together to talk about their problems and, second, treat respondent for his alcohol problem. She thought it would take three weeks to attain the goals in the treatment plan.

On cross-examination, Dr. Arcinas admitted that respondent denied that he attempted to commit suicide and stated that, to her knowledge, he has never attempted to commit suicide. She was also unaware of any criminal charges against respondent. Respondent physically abused his wife a year before and continues to verbally threaten his wife, who is afraid of him. According to Dr. Arcinas, respondent had not done anything physical to anybody in respondent's unit at the Elgin Mental Health Center and was capable of taking care of himself. She also admitted that any injuries respondent may have received in the fight were not major and that respondent was only involved in one fight.

John Robinson, respondent's brother, testified that both he and his father were willing to help respondent, that his family wants him home, and that respondent would be living with their father. Robinson also stated that respondent had never been violent towards him.

Respondent testified that he planned to start counseling at the McHenry Family Mental Health Center and to move in with his fa-

ther. He recognized that he had a drinking problem, but he wanted to "get away from this problem." Respondent stated that he was not suicidal and had never attempted to commit suicide. According to respondent, he planned to go to Alcoholics Anonymous meetings, make appointments at the Mental Health Center, and work things out with the family. Respondent called his wife every day, and she was willing to attend counseling with him. There were no criminal charges pending against him. Respondent stated that prior to his recent drinking problem he had gone seven years without drinking and could "go the rest of [his] life after this experience."

On cross-examination, respondent said he never told Dr. Arcinas that he walked in front of trucks. He also said he went to a bar after leaving the Elgin Mental Health Center because he felt drugged.

The trial court found that respondent suffered from a mental illness and could be expected to inflict serious physical harm on himself or another. The court further noted that it considered the testimony of the treatment plan and found the Department of Mental Health to be the least restrictive environment for respondent.

We need only address respondent's contention that the trial court failed to comply with the statutory requirements in section 3—810 of the Code that the facility director, or such other person as the court may direct, prepare a report "including information on the appropriateness and availability of alternative treatment settings, a social investigation of the respondent, a preliminary treatment plan, and any other information which the court may order" and that "if the respondent is found subject to involuntary admission, the court shall consider the report in determining an appropriate disposition." In this regard, respondent contends that the record does not show that a dispositional report in compliance with section 3—810 was prepared by the facility director or considered by the trial judge. Respondent relies on this court's decision in *In re Blume* (1990), 197 Ill. App. 3d 552, 554 N.E.2d 1100, requiring strict compliance with section 3—810. Ill. Rev. Stat. 1989, ch. 91½, par. 3—810.

The State responds that, because the record shows that there was testimony concerning the treatment plan and that the trial judge took notice of the testimony of the treatment plan in his dispositional findings, there was sufficient compliance with the statute. The State urges us to overrule our decision in *In re Blume* and follow the reasoning of the Appellate Court, Fourth District, in *In re James* (1990), 199 Ill. App. 3d 316, 556 N.E.2d 839, wherein the court found compliance with section 3—810 through testimonial evidence even though the dispositional report was not contained in the record at the time of

the hearing and, alternatively, found a waiver of the issue by the respondent's failure to object to the sufficiency of the report in the lower court.

■ We note that since *In re Blume* was filed our supreme court in *In re Splett* (1991), 143 Ill. 2d 225, held that the purposes of section 3—706, a different section of the Code regarding notice of the hearing, were satisfied where there was no challenge at trial and no prejudice was alleged. *Splett*, 143 Ill. 2d at 232.

Nevertheless, we feel bound by *stare decisis* to follow the dictates of *In re Blume*, which requires strict compliance with section 3—810, until the apparent conflict between our decision in *In re Blume* and that of the Appellate Court, Fourth District, in *In re James* is resolved by our supreme court.

■ In *In re Blume* this court held that section 3—810 "does not suggest that substantial compliance would be sufficient, and we cannot condone the failure to prepare and present a formal report which was intended to assist the trial court in making a disposition." (*In re Blume*, 197 Ill. App. 3d at 559, 554 N.E.2d at 1104.) Despite considerable testimony in this record concerning the treatment plan and the trial judge's reliance on the testimony of the treatment plan, because the record does not show that a formal dispositional report was prepared *and presented* to the trial judge in strict compliance with the statutory provision as required in *In re Blume*, the order of involuntary commitment must be reversed. Our resolution of the case on this basis makes it unnecessary to address the remaining issues on appeal advanced by respondent.

The judgment of the circuit court of Kane County is reversed.

Reversed.

NICKELS and DUNN, JJ., concur.