(Nos. 72165, 72320 cons.—

*In re* PHILLIP ROBINSON (The People of the State of Illinois, Appellant, v. Phillip Robinson, Appellee).—*In re* PAUL MURPHY (The People of the State of Illinois, Appellant, v. Paul Murphy, Appellee).

*Opinion filed October 1, 1992.*

CHIEF JUSTICE MILLER delivered the opinion of the court:

Following separate hearings in the circuit court of Kane County, a trial judge ordered Phillip Robinson and Paul Murphy involuntarily admitted to the Elgin Mental Health Center. The appellate court reversed the involuntary admission orders in both cases, citing the State's failure to comply with certain requirements of the Mental Health and Developmental Disabilities Code (Ill. Rev. Stat. 1989, ch. 91½, par. 1—100 *et seq.*) (the Code). We granted the State's petitions for leave to appeal (134 Ill. 2d R. 315), and consolidated the cases for review.

The appellate court held that the order for Paul Murphy's continued involuntary admission to the mental health center must be reversed because of the State's failure to file a "current treatment plan" as required by section 3—813(a) of the Code. (214 Ill. App. 3d 8, 14.) Under section 3—813(a), the plan is to include "an evaluation of the patient's progress and the extent to which he is benefiting from treatment." Ill. Rev. Stat. 1989, ch. 91½, par. 3—813(a).

In Robinson's case, the appellate court held that the trial judge's involuntary admission order must be reversed because the record in the case did not establish that a "dispositional report" was prepared in strict compliance with section 3—810 of the Code. (214 Ill. App. 3d 165, 169.) Section 3—810 provides that "the facility director or such other person as the court may direct shall prepare a report including information on the appropriateness and availability of alternative treatment settings, a social investigation of the respondent [and] a preliminary treatment plan ***." Ill. Rev. Stat. 1989, ch. 91½, par. 3—810.

The State acknowledges that a current treatment plan had not been filed with the trial court at the time of Murphy's hearing on December 8, 1989. Likewise, the State admits that no predispositional report was of record at the time of Robinson's hearing on April 12, 1990. Neither respondent objected to the absence of these documents at the hearings, however. The State argues that the information required by sections 3—813(a) and 3—810 was presented to the trial judge through testimony, and, relying on *In re Splett* (1991), 143 Ill. 2d 225, urges this court to recognize its substantial compliance with these statutes.

In *Splett*, this court first construed the notice provision of the Code (Ill. Rev. Stat. 1987, ch. 91½, par. 3—706). Although the record in that case did not show that the respondent was formally served with notice of involuntary admission proceedings, he was present at the hearing and represented by counsel who had adequate time to prepare. The respondent did not raise any challenge to the sufficiency of notice. The court concluded that where the purposes of the statute were fulfilled by respondent's actual knowledge of the proceedings, the failure of the record to affirmatively indicate that he had been served with formal notice was harmless error. (*Splett*, 143 Ill. 2d at 231-32.) The court thus construed the statute not to require "the performance of an empty formality when the legislative intent has been otherwise achieved." *Splett*, 143 Ill. 2d at 232.

Nevertheless, this court ultimately held that the order for involuntary admission issued in *Splett* must be reversed because the record did not sufficiently establish that the respondent, who had previously admitted himself voluntarily to a mental health facility, had submitted a written request for discharge as expressly required by section 3—403 of the Code. (*Splett*, 143 Ill. 2d at 234-35; Ill. Rev. Stat. 1987, ch. 91½, par. 3—403.) The court found that, because the purpose of the statute was to encourage

voluntary admissions, evidence of the respondent's oral request for discharge was not sufficient to trigger involuntary admission proceedings against him. (*Splett*, 143 Ill. 2d at 233-34.) Despite the respondent's failure to object on this point, the court reasoned that strict compliance with the statute was necessary to avoid discouraging the mentally ill from seeking treatment. *Splett*, 143 Ill. 2d at 235-36.

Robinson and Murphy (respondents) argue that the plain language of sections 3—810 and 3—813(a) should not be ignored, and that any recognition of substantial compliance in the context of involuntary admission procedures is contrary to a "long line" of appellate court decisions holding that strict compliance with these procedures is required. (See, *e.g.*, *In re Blume* (1990), 197 Ill. App. 3d 552 (section 3—810); *In re Lamb* (1990), 202 Ill. App. 3d 725 (section 3—813(a)).) They maintain that strict compliance is necessary to justify the intrusive nature of the Code (*In re Long* (1990), 203 Ill. App. 3d 357, 361-62), and that it is the only tool available to enforce the statutory requirements.

We see no need to reconsider this court's recent decision in *Splett*, nor any reason to limit the application of its principles to the statutory provisions at issue there. We also decline, however, the State's invitation to find that substantial compliance with the Code is sufficient in all cases, or even that it is always sufficient under sections 3—810 and 3—813(a). We decide only the issues presented by the facts of these particular cases. The question whether a respondent may compel strict compliance with these provisions by objection at an involuntary admission hearing is not before us.

Involuntary admission procedures implicate substantial liberty interests. (*Splett*, 143 Ill. 2d at 230.) These interests, however, must be balanced against the dual objectives of involuntary admissions generally, which are to pro-

vide care for those who are unable to care for themselves, and to protect society from the dangerously mentally ill. (*People v. Lang* (1986), 113 Ill. 2d 407, 440.) Society's interest in providing treatment to the mentally ill while protecting its citizens from harmful conduct need not be jeopardized where the record in an involuntary admission hearing establishes that the purposes of statutory requirements are met and the respondent did not object to claimed errors in the proceeding. See *In re Stephenson* (1977), 67 Ill. 2d 544, 554 (the margin of error in denying the mentally ill protection and care should be held to a minimum).

The court recognized in *Splett* that, under certain circumstances, the State's failure to strictly comply with provisions of the Code may be excused if the record establishes that the purposes of the statute have been achieved. Those circumstances—failure to object to alleged deficiencies in the record and no showing of prejudice—exist here. Thus, the sole issue presented is whether the State's efforts to comply with requirements of sections 3—810 and 3—813(a) were sufficient to accomplish the purposes of these statutory provisions. As *Splett* makes clear, this determination rests on an examination of the specific statutes in question. Because these cases require us to construe two sections of the Code, as well as two different records, we shall discuss them separately.

I. *In re* Robinson, No. 72165

Section 3—810 of Code, which applies to involuntary admissions, provides:

> "Before disposition is determined, the facility director or such other person as the court may direct shall prepare a report including information on the appropriateness and availability of alternative treatment settings, a social investigation of the respondent, a preliminary treatment plan, and any other information which the court may order. The

treatment plan shall describe the respondent's problems and needs, the treatment goals, the proposed treatment methods, and a projected timetable for their attainment. If the respondent is found subject to involuntary admission, the court shall consider the report in determining an appropriate disposition." Ill. Rev. Stat. 1989, ch. 91½, par. 3—810.

A threshold issue in this case is whether, strictly construed, section 3—810 necessitates the filing of a written report. Apart from the appellate court district in the present case, other districts have also discussed the requirements of section 3—810. For example, the appellate court, third district, has held that psychiatric testimony alone is insufficient to demonstrate compliance with the statute, at least when there is no evidence that a written report has been prepared. (*In re Venegas* (1991), 218 Ill. App. 3d 423.) The appellate court, fourth district, has ruled that the requirements of section 3—810 are met if the contents of a previously prepared, but unfiled, predispositional report are presented to the trial court through oral testimony. *In re James* (1990), 199 Ill. App. 3d 316, 319.

The State correctly notes that section 3—810 does not expressly require that a predispositional report be in writing, or that it be filed with the trial court. The language of the statute is ambiguous. It refers only to the preparation and consideration of a predispositional report. Transcripts of the legislative debates concerning the revision of the Code in 1979, when section 3—810 was adopted, shed no light on this issue.

Nevertheless, we believe the statute contemplates a written document. The language of section 3—810, read as a whole, indicates that the legislature intended for a predispositional report to be more than testimony at a hearing. (*Venegas*, 218 Ill. App. 3d at 426.) The statute re-

quires a relatively detailed report, and we believe the legislature intended the report to be in written form.

The State acknowledges that a written predispositional report, prepared by the facility director or some court-appointed person, was not formally presented to the trial court. However, because the respondent did not object to the State's failure to strictly comply with the requirements of section 3—810, our duty here is to determine whether the State's efforts in introducing into evidence, through the testimony of witnesses, the information required by the statute are sufficient to serve its purposes.

The State argues that substantial compliance with section 3—810 should be recognized under these circumstances because all the information that is to be included in a predispositional report was presented at Robinson's hearing through testimony, and because the trial judge relied on this testimony in making his determination. The State therefore claims that the respondent was not prejudiced, that the purposes of section 3—810 were met, and that any failure to strictly comply with the requirements of the statute constitutes harmless error.

Although Robinson failed to make this argument at his hearing, he now argues that the record in this case does not establish that a written predispositional report was prepared, presented, and considered in the trial court. He maintains that the purposes of the statute cannot be met with anything less than strict compliance.

It is clear from a reading of section 3—810 as a whole that its purpose is to provide trial judges certain information necessary for determining whether an individual is subject to involuntary admission to a mental health facility. Other purposes of the statute are to protect against unreasonable commitments and patient neglect, and to ensure adequate treatment for mental health care recipients.

The respondent has cited no reason why these goals cannot be met in the absence of an affirmative showing

that the trial judge was presented a written predispositional report prepared by a particular person either in advance of or at the time of the hearing. Instead, respondent concludes that strict compliance is "the only way to ensure that a predispositional report is actually prepared."

Where a respondent fails to object to the absence of a predispositional report, strict compliance with section 3—810 is required only when the legislative intent cannot otherwise be achieved. (See *Splett*, 143 Ill. 2d at 233-34.) Under these circumstances, we believe that oral testimony containing the information required by the statute can be an adequate substitute for the presentation of a formal, written report prepared by the facility director or some other person authorized by the court.

Robinson argues, however, that the testimony presented at his hearing is insufficient to satisfy the purposes of section 3—810. He claims that adequate consideration was not given to the appropriateness and availability of alternative treatment settings, such as the possibility of outpatient counseling. He also argues that the trial judge in making his decision relied on nothing more than testimony about a treatment plan, which is only part of a predispositional report.

Dr. Teresita Arcinas, the psychiatrist employed by the Elgin Mental Health Center who examined Robinson, testified that a treatment plan had been developed for him "on paper." Robinson's "problem" was alcoholism and a mental illness known as "adjustment disorder with disturbance of conduct and emotion." Dr. Arcinas said Robinson's symptoms included mild depression and an inability to cope with family problems and stress. She said Robinson had been suicidal, that he had threatened his wife, that he had gotten into fights at taverns and that he needed to "learn to control himself."

According to Dr. Arcinas' testimony, the treatment goals were to help Robinson deal with family problems and

his reactions to stress without becoming violent and without resorting to alcohol. This was to be accomplished through substance abuse treatment, by encouraging Robinson to attend Alcoholics Anonymous meetings offered at the Elgin Mental Health Center, and by involving him in counseling with his wife. Dr. Arcinas said she thought it would take "at least three weeks" to accomplish these goals. This testimony supplied the information that would normally be included in the preliminary treatment plan portion of a predispositional report.

As for information about the appropriateness and availability of alternative treatment settings, Dr. Arcinas testified that the Elgin Mental Health Center would be the least restrictive environment for Robinson. She said that his admission to the center would ensure that he would not go out drinking whenever he became angry and frustrated about "trying to work things out" with his wife. Information about Robinson's social situation was supplied not only by Dr. Arcinas, but by Robinson's own testimony and that of his brother as well.

We find that the testimony of the State's expert witness made reference to all of the information required in a predispositional report, and that, in the absence of an objection by the respondent, the purposes of section 3—810 were met in this case. Accordingly, the State's failure to present a formal predispositional report prepared by the facility director or someone directed to do so by the court is harmless error.

We note that the appellate court in this case relied on its earlier opinion in *In re Blume* (1990), 197 Ill. App. 3d 552. The *Blume* court, without discussing whether section 3—810 requires the filing of a written document, found insufficient evidence in the record that a predispositional report had been prepared or presented to the trial judge. (*Blume*, 197 Ill. App. 3d at 557.) We read that case as holding that the oral testimony there was simply too cur-

sory to serve the purposes of section 3—810, even where the respondent had failed to object to the State's failure to strictly comply with the statute. To the extent that *Blume* stands for the proposition that the doctrine of substantial compliance is never to be applied to section 3—810, and that strict compliance with the mandates of the statute is always required (see *Blume,* 197 Ill. App. 3d at 559), it is overruled.

## II. *In re* Murphy, No. 72320

Respondent Murphy contends that the commitment order entered in his case is invalid because the State failed to file with the trial court a current treatment plan, as provided by section 3—813(a) of the Code. Section 3—813(a) provides in part that, if the State seeks to continue an involuntary admission to a mental health center, "the facility director shall file with the court a current treatment plan which includes an evaluation of the patient's progress and the extent to which he is benefiting from treatment." Ill. Rev. Stat. 1989, ch. 91½, par. 3—813(a).

The State argues that the record in this case clearly shows that the purposes of section 3—813(a) were met with oral testimony pertaining to a treatment plan. Therefore, the State claims that its failure to strictly comply with the requirements of the statute by filing a current treatment plan with the trial court constitutes harmless error, and that, according to the rationale of *Splett,* the readmission order should be affirmed. We agree.

The appellate court in this case found that one of the purposes of section 3—813(a) is to ensure that patients who are repeatedly admitted to mental health centers against their wills receive appropriate treatment and care. (214 Ill. App. 3d at 13.) The statute aids the court's ongoing supervision of the treatment and care of involuntarily admitted patients, and assures that their progress is monitored and evaluated. In this way, the statute represents an

attempt to prevent the "warehousing" of mental health care patients. 214 Ill. App. 3d at 13-14.

We agree with the appellate court's assessment of the purposes behind section 3—813(a). We disagree, however, with the court's conclusion that oral testimony cannot serve these purposes, or that a trial judge is unable to monitor a patient's progress unless the treatment plan called for by the statute is formally filed with the court and made part of the record each time a patient is readmitted to a mental health facility.

There is no requirement in section 3—813(a) that the trial judge consider previously filed treatment plans when determining whether an individual continues to be subject to involuntary admission. Indeed, the statute requires the filing of a "current" treatment plan. This treatment plan, for purposes of the hearing at hand, is to include an evaluation of the patient's "progress and the extent to which he is benefiting from treatment." Should a trial judge believe information about the patient's progress—whether it be in the form of a filed treatment plan or oral testimony—inadequate, the judge can examine the record from an earlier proceeding, ask for further testimony, or deny the State's petition for continued involuntary admission.

Where a respondent does not object to the lack of a written treatment plan, and where there is no prejudice because the trial judge is presented all of the information required by section 3—813(a), we believe that substantial compliance with the statute is sufficient. Murphy, however, argues that even if the purposes of the statute may be met by testimony in some cases, there was "absolutely no information" presented at his hearing regarding his progress and the extent to which he was benefiting from treatment. The record in this case indicates otherwise.

Dr. Elaine Nicola, the psychiatrist who examined Murphy, testified that a treatment plan had been developed for the respondent. Medication constituted a "large part" of

this plan, which also included the use of restraints when necessary to prevent harm to other patients. She testified that Murphy's condition, diagnosed as schizoaffective disorder, had not been stabilized since his admission to the mental health center more than a year before the hearing, and that he remained psychotic. Dr. Nicola also said that it was difficult to project a timetable for achieving the goal of involving Murphy in more activities at the center because he is "explosive."

This testimony clearly indicates that Murphy was not making progress and that he had yet to benefit from treatment. We therefore find that the oral testimony given in this case by the State's expert witness satisfied the purposes of the treatment plan required by section 3—813(a). The State's failure to strictly comply with the statute by filing a current treatment plan with the trial judge is therefore harmless error.

### III. Other Issues

The appellate court's disposition of these cases did not require it to reach several additional arguments raised by the respondents. These issues have been briefed and argued before this court, and we will consider them now.

Murphy argues that section 3—810 also applies to continued involuntary admissions and that the order issued in his case must be reversed because the State failed to present, and the trial judge did not consider, a predispositional report. The State counters that section 3—810 is applicable only to initial involuntary admissions. We note that Murphy did not object in the trial court to the State's failure to prepare a formal predispositional report. Thus, whether or not section 3—810 applies in cases of continued admissions, we need only consider whether its purposes were met by the presentation of oral testimony at the respondent's hearing.

The record in this case contains extensive testimony by Dr. Nicola as to why the Elgin Mental Health Center was the least restrictive environment for Murphy. It also contains sufficient information about his social situation. As for the requirement of a preliminary treatment plan, Dr. Nicola adequately described Murphy's problems and the proposed treatment goals (stabilization and more involvement in activities), treatment methods (medication and restraints) and a timetable for their attainment (uncertain). Moreover, the trial judge stated that he relied on this testimony when making his decision. We therefore find that the record in this case establishes the State's substantial compliance with the requirements of section 3—810.

Robinson argues that the trial court's involuntary admission order must be reversed because it did not specify the duration of treatment. At the time of the hearing conducted in this case, section 3—813(a) of the Code provided in part that "[a]n initial order for hospitalization or alternative treatment shall be for a period not to exceed 60 days." (Ill. Rev. Stat. 1989, ch. 91½, par. 3—813(a); cf. Ill. Rev. Stat. 1991, ch. 91½, par. 3—813(a) (allowing 180-day period of hospitalization).) In this case, information printed on the back of the trial judge's order stated that the order was valid for no more than 60 days.

The plain language of section 3—813(a) does not require a trial judge to specify a fixed period of hospitalization when ordering an involuntary commitment. Nevertheless, Robinson argues that the statutory and constitutional mandate that patients be treated in the least restrictive environment, "[w]hen applied to the concept of time," requires that the duration of treatment be the shortest appropriate period.

This argument is without merit. The fact that hospitalization should be no longer than necessary to provide effective treatment has no bearing on the issue of whether, under section 3—813(a), a trial judge must specify a fixed

period of commitment in an initial order. Section 3—813(a) sets a maximum period of initial commitment. An order authorizing in-patient treatment for up to 60 days does not mean that an individual will be hospitalized for that entire period. Patients may petition for discharge at any time, and mental health officials must discharge those who are no longer mentally ill and therefore not subject to involuntary commitment. Ill. Rev. Stat. 1989, ch. 91½, pars. 3—900, 3—902.

At Robinson's involuntary commitment hearing, the State's expert witness testified that his treatment would take "at least three weeks." Robinson was committed to the Elgin Mental Health Center for a maximum of 60 days, but the facility director authorized his released after just eight days. Because section 3—813(a) does not require that a specific duration of treatment be stated, we find that the trial judge's order complied with the statute. See *In re Grimes* (1990), 193 Ill. App. 3d 119, 123.

Finally, Robinson argues that the trial court's order must be reversed because the State failed to prove by clear and convincing evidence that he suffered from a mental illness. (See Ill. Rev. Stat. 1989, ch. 91½, par. 1—119.) We find this argument unpersuasive.

Robinson correctly notes that the State, in order to prove mental illness for the involuntary commitment purposes of section 1—119, must show that the illness substantially impairs an individual's functioning. (*People v. Lang* (1986), 113 Ill. 2d 407, 453 (mental illness is an "organic, mental or emotional disorder which substantially impairs the person's thought, perception of reality, emotional process, judgment, behavior, or ability to cope with the ordinary demands of life").) To constitute "substantial impairment," mental illness must be serious enough to create a reasonable expectation that the person will inflict serious harm upon himself or another in the near future,

or that the person will be unable to provide for his own care and protection. *Lang*, 113 Ill. 2d at 453-54.

In this case, the State presented sufficient evidence from which the trial judge could conclude that Robinson was mentally ill, and that this illness substantially impaired his functioning. A psychiatrist testified that Robinson suffered from mild depression, alcoholism and "adjustment disorder with disturbance of conduct and emotion." She described this disorder as a maladaptive reaction to "psychosocial stressors," such as family problems or the loss of a job. Robinson, she said, could not cope with family discord or setbacks in his business.

The psychiatrist also testified that, after several years of sobriety, Robinson had begun drinking to intoxication again, and that when he was drunk he would threaten his wife and get into fights in bars. She said he had talked of suicide and admitted to having run into traffic on a busy street. In her medical opinion, Robinson could reasonably be expected to inflict serious physical harm upon himself or another in the near future. We therefore find that the order committing Robinson to the Elgin Mental Health Center because of mental illness was supported by the evidence.

For the reasons stated, in each of these consolidated cases the judgment of the appellate court is reversed, and the judgment of the circuit court of Kane County is affirmed.

> *Appellate court judgments reversed;*
> *circuit court judgments affirmed.*