*In re* JOHN REED, Asserted to be a Person Subject to Involuntary Admission (The People of the State of Illinois, Petitioner-Appellee, v. John Reed, Respondent-Appellant).

Third District    No. 3—96—1071

Opinion filed September 10, 1997.

William J. Conroy, Jr., of Guardianship & Advocacy Commission, of Decatur, and Jeff Plesko, of Guardianship & Advocacy Commission, of Anna, for appellant.

Kevin W. Lyons, State's Attorney, of Peoria (John X. Breslin and Nancy Rink Carter, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE LYTTON delivered the opinion of the court:

Respondent John Reed was admitted to Methodist Hospital on an emergency basis on December 2, 1996. The State filed a petition for involuntary admission on December 3, and a hearing was set for the next day. Both respondent and his guardian were present at the hearing.

The State presented testimony from Dr. Anthony James Caterine, respondent's treating psychiatrist. Respondent did not offer any evidence. The trial court found that respondent was a person subject to involuntary admission and ordered him committed for up to 90 days. Respondent appeals. We vacate the trial court's order.

## FACTS

Respondent is a 34-year-old man with Down's syndrome and an IQ of between 18 and 20; his mother is his legal guardian. On December 2, 1996, respondent's mother took him to a clinic to determine why his behavior was deteriorating. When clinic workers tried to perform a blood test, respondent started to hit his head violently against a wall, and he was subsequently admitted to the psychiatric unit of Methodist Hospital. While he was in the hospital, respondent began throwing himself on the floor for no apparent reason. The hospital staff became concerned that respondent would harm himself and restrained and medicated him. Continued medication has reduced respondent's agitated behavior.

On December 3, the State filed a petition for involuntary admission and supporting affidavits pursuant to section 3—600 of the Mental Health and Developmental Disabilities Code (Code) (405 ILCS 5/1—100 et seq. (West 1994)). See 405 ILCS 5/3—600 (West 1994). The trial court set a hearing on the petition for December 4. Respondent was not served with a notice of the hearing, and it is unclear whether notice was mailed to him. His guardian did not receive a copy of the petition or the notice of hearing. However, respondent and his guardian attended the hearing with appointed counsel.

At the hearing, the State presented testimony from Dr. Caterine, who stated that respondent was severely mentally retarded and that he could not rule out the possibility that respondent was also suffer-

ing from a mental illness. Dr. Caterine believed that respondent was benefitting from medication and should remain in the hospital for another week or two so that the dosages could be lowered to reduce the side effects. However, Dr. Caterine indicated that if there was a challenge to respondent's mother being his guardian, he would recommend hospitalizing respondent for a longer period. Respondent's counsel cross-examined Dr. Caterine but did not present any other evidence.

The trial court found that respondent should be involuntarily committed for not more than 90 days because he had a "developmental disability, Down's syndrome, possible mental illness to be ruled out in the future" and had shown a tendency to harm himself. The court believed that respondent's condition made him a danger to himself or others in the future. Respondent's guardian filed a timely notice of appeal from this order.

## DISCUSSION

Respondent argues that the State did not prove that he met the criteria for involuntary admission under section 3—600 of the Code. See 405 ILCS 5/3—600 (West 1994). We agree.

■ Under section 3—600, the State must prove by clear and convincing evidence that respondent is "[a] person 18 years of age or older who is subject to involuntary admission and in need of immediate hospitalization." 405 ILCS 5/3—600, 3—808 (West 1994). Section 1—119 of the Code defines a "[person] subject to involuntary admission" as one suffering from a mental illness. 405 ILCS 5/1—119 (West 1994). In *People v. Lang*, 113 Ill. 2d 407, 453, 498 N.E.2d 1105, 1126 (1986), our supreme court stated that "[a] 'mentally ill' person for purposes of section 1—119 is an individual with an organic, mental or emotional disorder which substantially impairs the person's thought, perception of reality, emotional process, judgment, behavior, or ability to cope with the ordinary demands of life." See also *In re Robinson*, 151 Ill. 2d 126, 140, 601 N.E.2d 712, 720 (1992).

■ In this case, Dr. Caterine presented the only evidence offered at the hearing concerning respondent's mental state. He testified that respondent suffered from severe mental retardation, which the Code defines as "significantly subaverage general intellectual functioning which exists concurrently with impairment in adaptive behavior and which originates before the age of 18 years." 405 ILCS 5/1—116 (West 1994). Because he is mentally retarded, respondent has a "developmental disability" under the Code. See 405 ILCS 5/1—106 (West 1994). However, the Code does not suggest that either the

presence of mental retardation or a developmental disability supports a finding of mental illness.

On the contrary, Illinois implicitly accepts that mental retardation and mental illness are not the same condition. Our statutes provide for separate procedures for the involuntary commitment of the mentally ill (405 ILCS 5/3—200 *et seq.* (West 1994)) and the mentally retarded (405 ILCS 5/3—200(b), 4—200 *et seq.* (West 1994)). Most other states have similar provisions. *Heller v. Doe*, 509 U.S. 312, 327 & n.2, 125 L. Ed. 2d 257, 275 & n.2, 113 S. Ct. 2637, 2646 & n.2 (1993). In *Heller*, the United States Supreme Court rejected an equal protection challenge to a similar statutory scheme in Kentucky. See U.S. Const., amend. XIV. After analyzing specific differences between the two groups, the Court recognized an historical and "commonsense distinction" between them. *Heller*, 509 U.S. at 327, 125 L. Ed. 2d at 275, 113 S. Ct. at 2646. The Illinois legislature has also made this distinction. Evidence of mental retardation alone cannot support a petition for involuntary commitment brought under section 3—600 of the Code.

In this case, Dr. Caterine testified that because of respondent's recent change in behavior, he believed that he had to "rule out" the possibility of "some illness on top of [respondent's] mental retardation, such as depression, psychosis." He indicated that while there was evidence suggesting that "there's something else going on," he was not sure what it was. He also stated that he was "not quite sure if [respondent was] suffering from a mental illness." The State has not provided us with any other evidence that respondent had a mental illness.

At best, the testimony shows that respondent *may* have been suffering from a mental illness. The Code mandates, however, that a petition for involuntary commitment be supported by clear and convincing evidence. This degree of proof requires far more than mere speculation about possible causes underlying a change in behavior. In this case, the State failed to show by clear and convincing evidence that respondent actually *had* a mental illness at the time of the hearing. 405 ILCS 5/3—808 (West 1994). Because the State failed to meet its burden of proof in this case, we vacate the trial court's order involuntarily committing respondent.

Because we have vacated the trial court's order for the reasons stated above, we need not reach the remaining contentions raised by respondent.

## CONCLUSION

The judgment of the circuit court of Peoria County is vacated.

Order vacated.

HOMER and SLATER, JJ., concur.