# Illinois Official Reports

## Supreme Court

---

### *In re Lance H.*, 2014 IL 114899

---

| | |
|---|---|
| Caption in Supreme Court: | *In re* LANCE H. (The People of the State of Illinois, Appellant, v. Lance H., Appellee). |
| | |
| Docket No. | 114899 |
| | |
| Filed | October 17, 2014 |
| Rehearing denied | January 26, 2015 |
| | |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Where a respondent who was a resident at a mental health facility testified, at a hearing on a petition to continue his involuntary admission, that he wanted to be admitted voluntarily, but where no oral or written motion therefor was made by his attorney, the circuit court did not err in failing to consider or rule on this request and was not required to *sua sponte* grant a continuance for the making of such a motion, although it did have discretion to grant such a continuance if moved for by counsel. |
| | |
| Decision Under Review | Appeal from the Appellate Court for the Fifth District; heard in that court on appeal from the Circuit Court of Randolph County, the Hon. Richard A. Brown, Judge, presiding. |
| | |
| Judgment | Appellate court judgment reversed.<br>Circuit court judgment affirmed. |

Counsel on
Appeal

Lisa Madigan, Attorney General, of Springfield, and Randall Rodewald, State's Attorney, of Chester (Michael A. Scodro and Carolyn E. Shapiro, Solicitors General, and Richard S. Huszagh, Assistant Attorney General, all of Chicago, and Patrick Delfino, Stephen E. Norris and Sharon Shanahan, all of the Office of the State's Attorneys Appellate Prosecutor, of Mt. Vernon, of counsel), for the People.

Barbara A. Goeben and Veronique Baker, of the Legal Advocacy Service of the Guardianship and Advocacy Commission, of Alton, for appellee.

Justices

CHIEF JUSTICE GARMAN delivered the judgment of the court, with opinion.
Justices Freeman, Thomas, Kilbride, Karmeier, and Theis concurred in the judgment and opinion.
Justice Burke dissented, with opinion.

## OPINION

¶ 1 The circuit court of Randolph County committed respondent, Lance H., to the Chester Mental Health Center for 180 days on May 4, 2011. Respondent appealed his involuntary admission, arguing the trial court violated the Mental Health and Developmental Disabilities Code (Mental Health Code) (405 ILCS 5/1-100 (West 2010)) by disregarding his oral request, in testimony, to be voluntarily admitted. The appellate court issued a ruling on August 8, 2012, more than nine months after respondent's term of commitment ended. 2012 IL App (5th) 110244. The appellate court first considered whether respondent's case might fall under an exception to the mootness doctrine and found the public interest exception applied. *Id.* ¶ 19. The appellate court reversed, holding that section 3-801 of the Mental Health Code (405 ILCS 5/3-801 (West 2010)) required the trial court to "consider and rule" on respondent's request. 2012 IL App (5th) 110244, ¶ 26. We granted the State's petition for leave to appeal (Ill. S. Ct. R. 315 (eff. July 1, 2013)) and now reverse the appellate court and affirm the circuit court.

¶ 2                                    BACKGROUND

¶ 3 Respondent is a 53-year-old man who has spent much of his adult life incarcerated or institutionalized. Since being paroled from the Department of Corrections in 1997, respondent had been admitted to mental health facilities fifteen times before the involuntary admission at issue in this case. In 2008, upon the conclusion of a sentence at Menard Correctional Center for parole violations, he was involuntarily admitted to Chester Mental Health Center (CMHC).

- 2 -

¶ 4	On April 28, 2011, David Dunker[1] filed a petition alleging that respondent was a person subject to involuntary admission because (1) due to his mental illness, he was reasonably expected, unless treated on an inpatient basis, to engage in conduct subjecting himself or another person to physical harm or a reasonable expectation of physical harm; and (2) due to his mental illness, he was unable to provide for his basic physical needs so as to guard himself from serious harm without the assistance of family or others, unless treated on an inpatient basis. The petition included a certificate by a CMHC staff psychiatrist setting forth these two bases for involuntary admission and opining that respondent was in need of immediate hospitalization to prevent those harms. The petition also had respondent's 30-day treatment plan attached. The certificate and treatment plan stated a variety of threats, violent acts, incidents of resisting treatment, and inappropriate behaviors by respondent, some of which were later described in testimony at the commitment hearing.

¶ 5	The State called only one witness at the commitment hearing. Travis Nottmeier testified that he was a social worker at CMHC, that he had interviewed respondent and those treating him, and that he had reviewed respondent's clinical file. Nottmeier testified that respondent has "an Axis I diagnosis of schizoaffective disorder, bipolar type, paraphilia NOS, history of noncompliance with the medications, and an Axis II diagnosis of antisocial personality disorder." Nottmeier testified that respondent displayed "delusional thought content which is grandiose, paranoid, and persecutory in nature," that he had periodic inappropriate sexual conduct, that he engaged in acts of verbal and physical aggression, and that he had "noncompliance with medication which displays poor insight into his mental illness." Nottmeier testified that respondent was presently taking his medication, but on a "crush and observe order" due to prior refusals. Nottmeier testified as to three incidents within the prior two months in which respondent had to be placed in physical holds or seclusion due to aggressive behavior, including two incidents of hitting fellow patients. Overall, Nottmeier testified to five instances of threatening or aggressive behavior from respondent. Nottmeier opined that respondent would not take his medication outside the structured setting of a CMHC, that respondent could not take care of his own basic physical needs, and that outside the structure of CMHC, respondent's condition would deteriorate to the point he would be a threat to harm himself or others. Nottmeier further opined that respondent meets the criteria for involuntary commitment.

¶ 6	On cross-examination, Nottmeier testified that respondent had been placed on "red level" the day before the petition for involuntary admission was filed, for an incident in which he engaged in threatening behavior. Nottmeier said respondent does engage in his therapy sessions, but said respondent also became hostile and verbally aggressive with his therapist. Nottmeier also said respondent participates in off-unit activities when allowed, though occasionally with inappropriate behavior, and that respondent has "limited contact with some of his family members." Nottmeier testified he was unaware of any effort by respondent to seek voluntary admission to CMHC. Asked if there was any reason why respondent "could not elect to become a voluntary patient," Nottmeier replied, "None that I'm aware of."

¶ 7	Respondent testified on his own behalf. He testified that the experience of his mother's death had given him insights that would deter him from committing any further acts of

---

[1]The petition from Dunker does not identify his title, indicates he has no relationship to the respondent, and lists only a P.O. Box in Chester for his address.

violence, and said he would take his medication because he now understood the necessity. Respondent believed that, if released, he would be able to provide for his own physical needs, that he would live with his brother or sister, and that family and friends could assist in his care. Respondent testified that he had spoken to his attorney the morning of the hearing about his desire to become a voluntary patient. Respondent also testified that he had told his assigned social worker that he wanted to become a voluntary patient, but the social worker had brushed off his wishes for two years. Respondent's counsel then asked him, "And pursuant to our conversation this morning, you are requesting to become a voluntary patient; is that correct?" Respondent answered, "Yes, sir." Respondent's counsel did not move for a continuance or make any other motion relating to respondent's desire to become a voluntary patient.

¶ 8        The State did not cross-examine respondent, nor did the respondent call any other witnesses. The circuit court found respondent subject to involuntary admission without further addressing respondent's statement that he was requesting to become a voluntary patient. The court made findings as to respondent's mental illness and found he was "reasonably expected to engage in dangerous conduct that may include threatening behavior, conduct that may cause other persons to be in expectation of being harmed, unable to provide for basic physical needs," and "unable to understand his need for treatment." Checking boxes on a preprinted order, the court found respondent was a person with mental illness who, "because of his illness is reasonably expected to engage in dangerous conduct which may include threatening behavior or conduct placing that person or another individual in reasonable expectation of being harmed," who "because of his illness is unable to provide for his basic physical needs so as to guard himself from serious harm without the assistance of family or outside help," and who "because of the nature of his illness, is unable to understand his need for treatment and who, if not treated, is reasonably expected to suffer or continue to suffer mental deterioration or emotional deterioration, or both, to the point that the person is reasonably expected to engage in dangerous conduct." The court found hospitalization under the Department of Human Services to be the least restrictive environment appropriate and available.

¶ 9        The appellate court reviewed the case under the public interest exception to the mootness doctrine and reversed. The appellate court held that the circuit court failed to comply with the requirements of section 3-801 of the Mental Health Code, which permits the respondent to make a request for voluntary admission at any time prior to an adjudication that he is subject to involuntary admission. The appellate court noted that the circuit court took no action on respondent's statement in testimony that he requested voluntary admission. Looking to the language of the statute, it reasoned that "[i]mplicit in the language of the statute is that the trial court will actually consider and rule on the request, which did not occur in this case." 2012 IL App (5th) 110244, ¶ 26. The appellate court pointed to an absence of a recommendation from the facility director and an absence of evidence that voluntary treatment would be inadequate. *Id.* ¶¶ 25, 30. It also rejected any distinction in legal effect between an oral request and a written application. *Id.* ¶ 29.

¶ 10                                              ANALYSIS
¶ 11        Before this court, respondent does not challenge the adequacy of the evidence that he was subject to involuntary admission. The sole question presented in this case is whether the Mental Health Code requires the circuit court to act on an oral request for voluntary admission

to a mental health facility during a proceeding for involuntary admission to the facility. This is a question of statutory interpretation, which we review *de novo*. *In re Commitment of Fields*, 2014 IL 115542, ¶ 32. The primary goal of statutory interpretation is to determine the intent of the legislature, and the most reliable means of doing so is to apply the plain language of the statute. *Id.* Where the language is plain and unambiguous, we apply the statute without resort to further aids of statutory construction. *Id.*

¶ 12    As a threshold inquiry, however, we must consider our own jurisdiction over this case. The existence of an actual controversy is essential to appellate jurisdiction, and courts of review generally do not decide moot questions. *In re James W.*, 2014 IL 114483, ¶ 18. Where intervening events have made it impossible for the reviewing court to grant effective relief to the complaining party, the issues involved in the trial court no longer exist, and the case is moot. *Id.* ¶ 19. On May 4, 2011, the circuit court committed respondent to 180 days in Chester Mental Health Center. It has been nearly three years since his term of involuntary admission ended. The court's order can no longer serve as the basis for adverse action against the respondent, and this case is moot. See *In re Alfred H.H.*, 233 Ill. 2d 345, 351 (2009).

¶ 13    A court of review may, however, review a case under an exception to the mootness doctrine. "[T]here is no *per se* exception to mootness that universally applies to mental health cases." *In re Alfred H.H.*, 233 Ill. 2d 345, 355 (2009). The appellate court considered this case under the public interest exception (2012 IL App (5th) 110244, ¶ 19), and the parties do not further argue the issue here. The public interest exception applies when (1) the question presented is of a public nature, (2) there is a need for an authoritative determination for the future guidance of public officers, and (3) there is a likelihood of future recurrence of the question. *In re Alfred H.H.*, 233 Ill. 2d 345, 355 (2009). The public interest exception is " 'narrowly construed and requires a clear showing of each criterion.' " *Id.* at 355-56 (quoting *In re Marriage of Peters-Farrell*, 216 Ill. 2d 287, 292 (2005)).

¶ 14    This case presents a question of a public nature. "[T]he procedures which must be followed and the proofs that must be made before a court may authorize involuntary treatment to recipients of mental health services are matters of a public nature and of substantial public concern." *In re Mary Ann P.*, 202 Ill. 2d 393, 402 (2002). This case concerns the procedure for how a circuit court must respond to a respondent's request for voluntary admission after commencement of a hearing on involuntary admission. The appellate court concluded this case met the second criterion because it would aid the courts and future litigants in administering the Mental Health Code. 2012 IL App (5th) 110244, ¶ 18. We agree. As for the third criterion, respondent's own history demonstrates how this question might recur. Respondent has been found subject to involuntary admission multiple times prior to this adjudication, and this is not the first time respondent has sought voluntary admission. *In re Donrell S.*, 395 Ill. App. 3d 599, 602 (2009) (noting, in consolidated case including the same respondent as the case at bar, that "Lance signed an application to be admitted voluntarily to Chester"). Resolution of the proper procedure for voluntary and involuntary admission will be of aid to respondent in the event he should require further treatment, and to persons similarly situated. We conclude the public interest exception to the mootness doctrine applies to this case.

¶ 15                                   Voluntary Admission

¶ 16        There are two distinct tracks for formal[2] admission to a mental health facility for treatment of mental illness under the Mental Health Code: voluntary and involuntary. 405 ILCS 5/3-400 to 3-405, 3-700 to 3-706 (West 2010). Chapter III of the Mental Health Code governs admission, transfer, and discharge procedures for the mentally ill and contains separate articles describing voluntary and involuntary admission. This court has recognized a preference under the Mental Health Code for voluntary admission.

> "A voluntary admission serves an important purpose and generally is considered to be the preferred method of commencing treatment of mental illness. 'The advantages of voluntary admissions flow from the absence of compulsion in the initiation of psychiatric treatment. Psychiatric evidence indicates that a patient who recognizes his condition and voluntarily undertakes therapy is more likely to be rehabilitated than one upon whom treatment is forced.' (*Developments in the Law, Civil Commitments of the Mentally Ill*, 87 Harv. L. Rev. 1190, 1399 (1974); see also Comment, *Temporary Detention of 'Voluntary' Patients by Hospital Authorities: Due Process Issues*, 12 N.M.L. Rev. 791, 792-93 (1982).)" *In re Hays*, 102 Ill. 2d 314, 319 (1984).

The therapeutic advantages of voluntary admission come, in part, from the respondent's knowledge that his status is stable. *Id.* at 319-20. "An important means of encouraging voluntary admission is to guarantee voluntary patients the right to request their discharge." *In re James E.*, 207 Ill. 2d 105, 110 (2003).

¶ 17        A person 16 years of age or older may be voluntarily admitted to a mental health facility for treatment of mental illness "upon the filing of an application with the facility director of the facility if the facility director determines and documents in the recipient's medical record that the person (1) is clinically suitable for admission as a voluntary recipient and (2) has the capacity to consent to voluntary admission." 405 ILCS 5/3-400(a) (West 2010). A voluntarily admitted patient may seek discharge from the facility in writing; the facility director must either discharge the patient or initiate proceedings for involuntary admission within five days. 405 ILCS 5/3-400(b), (c) (West 2010). The application procedure for voluntary admission is described in section 3-401, which outlines who may execute an application for admission and provides requirements for the written application. The written application form must contain "in large, bold-face type a statement in simple nontechnical terms that the voluntary recipient may be discharged from the facility at the earliest appropriate time *** after giving a written notice of his desire to be discharged." 405 ILCS 5/3-401 (West 2010). The application must explain that the discharge is not to be delayed beyond five days, excluding Saturdays, Sundays, and holidays. *Id.* The application also must explain that, upon the filing of "a petition and 2 certificates *** asserting that the recipient is subject to involuntary admission," discharge may be delayed. *Id.* Section 3-401 also requires that the right to discharge be explained orally to the recipient of psychiatric care and that a copy of the application form be provided to any parent, guardian, relative, friend, or attorney who accompanied the recipient. *Id.*

¶ 18        The application requirements mirror the discharge requirements of section 3-403. 405 ILCS 5/3-403 (West 2010). The remainder of the article on voluntary admission for adults

---

[2]The Mental Health Code also provides for informal admission upon the facility director's determination that a patient is "clinically suitable for admission upon an informal basis." 405 ILCS 5/3-300 (West 2010). That provision is not relevant to this case.

focuses on patient transportation (405 ILCS 5/3-401.1 (West 2010)); a prohibition against physicians, examiners, and psychologists telling a patient that involuntary admission may result if the patient does not seek voluntary admission, unless the medical professional is prepared to execute a certificate for involuntary admission (405 ILCS 5/3-402 (West 2010)); periodic assessment by the facility director of a voluntary patient's need for hospitalization (405 ILCS 5/3-404 (West 2010)); and review of denials (405 ILCS 5/3-405 (West 2010)). Of note to this case are section 3-400 describing "the filing of an application," and section 3-401 prescribing the contents of "[t]he written application." 405 ILCS 5/3-400(a), 3-401(b) (West 2010). Voluntary admission under article IV thus contemplates a written application to be reviewed by the facility director. No alternative avenue for admission is provided in this article.

¶ 19                                          Involuntary Admission

¶ 20        The Mental Health Code also provides for involuntary admission for treatment of mental illness. 405 ILCS 5/3-700 (West 2010). "Involuntary admission procedures implicate substantial liberty interests." *In re Robinson*, 151 Ill. 2d 126, 130 (1992). Accordingly, our court has generally required strict compliance with the involuntary admission provisions of the Mental Health Code to avoid discouraging the mentally ill from seeking treatment. See *In re Splett*, 143 Ill. 2d 225, 235-36 (1991) (holding State could pursue involuntary admission against a voluntary patient only after the voluntary patient made a written request for discharge, and rejecting an oral request as sufficient under the statute); see also *In re Robinson*, 151 Ill. 2d 126, 130 (1992) (discussing *Splett*). But see *In re James E.*, 207 Ill. 2d 105, 111-14 (2003) (noting exception allowing involuntary admission where patient's condition has deteriorated beyond point of requesting discharge; allowing exception where nonstate hospital can no longer adequately treat patient). The court has not required strict compliance in all instances. See, *e.g.*, *Splett*, 143 Ill. 2d at 230-32 (rejecting a challenge based on lack of formal notice where the record demonstrated the respondent received actual notice, noting "we do not construe the statute as requiring the performance of an empty formality when the legislative intent has been otherwise achieved").

¶ 21        An individual with mental illness is subject to involuntary inpatient admission if he meets one of three criteria: (1) because of his illness he "is reasonably expected, unless treated on an inpatient basis, to engage in conduct placing such person or another in physical harm or in reasonable expectation of being physically harmed"; (2) because of his illness, he "is unable to provide for his *** basic physical needs so as to guard himself *** from serious harm without the assistance of family or others, unless treated on an inpatient basis"; or (3) he refuses treatment or is not adequately following his prescribed treatment, and because of his illness he is unable to understand his need for treatment, and "if not treated on an inpatient basis, is reasonably expected, based on his *** behavioral history, to suffer mental or emotional deterioration and is reasonably expected, after such deterioration" to fall into one of the first two criteria listed here. 405 ILCS 5/1-119 (West 2010). In considering whether a person falls into one of these categories, "the court may consider evidence of the person's repeated past pattern of specific behavior and actions related to the person's illness." *Id.*

¶ 22    Involuntary admission begins with the filing of a petition asserting a respondent is subject to involuntary admission.[3] 405 ILCS 5/3-701 (West 2010). The petition may be accompanied by a certificate executed by a physician, qualified examiner, psychiatrist, or clinical psychologist, stating that the person is subject to involuntary admission. 405 ILCS 5/3-702 (West 2010). Such a certificate must indicate the certifying professional personally examined the respondent not more than 72 hours previously, it must contain the certifying professional's clinical observations and other factual information relied upon for diagnosis, and it must contain a statement as to whether the respondent was advised of his rights. 405 ILCS 5/3-602 (West 2010). If no certificate is present, the court may order examination by a physician, clinical psychologist, or qualified examiner, and by a psychiatrist. 405 ILCS 5/3-703 (West 2010). Certificates filed by these professionals shall state whether the respondent is in need of immediate hospitalization. *Id.* Where a respondent is not already subject to involuntary admission, that "person shall be released upon completion of the examination unless the physician, qualified examiner or clinical psychologist executes a certificate stating that the person is subject to involuntary admission on an inpatient basis and in need of immediate hospitalization to protect such person or others from physical harm." 405 ILCS 5/3-704 (West 2010). The circuit court must set a hearing within five days, excluding weekends and holidays, after the earlier of (1) receipt of the second certificate, or (2) the respondent's admission to a mental health facility. 405 ILCS 5/3-706 (West 2010).

¶ 23    Article VIII of the chapter on admission, transfer, and discharge for mentally ill patients governs the proceedings for involuntary admission. It requires that a person be found subject to involuntary admission by "clear and convincing evidence" (405 ILCS 5/3-808 (West 2010)); provides for appeal rights and preservation of the record (405 ILCS 5/3-816, 3-817 (West 2010)); and sets requirements for a treatment plan. An initial order for commitment may not exceed 90 days in length; a second involuntary admission likewise may not exceed 90 days in length. 405 ILCS 5/3-813(a) (West 2010). Third and subsequent periods of involuntary admission may not exceed 180 days. 405 ILCS 5/3-813(b) (West 2010). Subsequent periods of involuntary admission can be obtained only after filing of petitions, certificates, and a treatment plan from the facility director, including an evaluation of the respondent's progress in treatment. 405 ILCS 5/3-813 (West 2010). Within 12 hours of a person being involuntarily admitted, "the facility director shall give the person a copy of the petition and a clear and concise written statement explaining the person's legal status and his right to counsel and to a court hearing." 405 ILCS 5/3-205 (West 2010). An admitted person is to be provided contact information for the Guardianship and Advocacy Commission when admitted, upon his objecting to admission, or whenever notified that his legal status is going to change. 405 ILCS 5/3-206 (West 2010).

---

[3]A petition for involuntary admission on an inpatient basis may also be accompanied by a petition for involuntary admission on an outpatient basis. 405 ILCS 5/3-750 (West 2010). Involuntary admission on an outpatient basis is suitable where an individual would meet the criteria for involuntary inpatient admission in the absence of outpatient treatment, which can only be reasonably ensured by court order; or where an individual's symptoms, without treatment, are expected to intensify to the point of qualifying for involuntary inpatient admission, and that individual's mental illness has caused him to refuse needed mental health services more than once. 405 ILCS 5/1-119.1 (West 2010).

¶ 25       Article VIII contains a provision providing for a respondent to seek voluntary admission to a mental health facility prior to a court ruling that he is subject to involuntary admission. "A respondent may request admission as an informal or voluntary recipient at any time prior to an adjudication that he is subject to involuntary admission on an inpatient or outpatient basis." 405 ILCS 5/3-801 (West 2010). This section requires the facility director to approve the request unless he determines "the respondent lacks the capacity to consent to informal or voluntary admission or that informal or voluntary admission is clinically inappropriate." *Id.* The director may find voluntary admission to be clinically inappropriate only with a "documented history of the respondent's illness and treatment demonstrating that the respondent is unlikely to continue to receive needed treatment following release from informal or voluntary admission and that an order for involuntary admission on an outpatient basis is necessary in order to ensure continuity of treatment outside a mental health facility." *Id.* If the facility director approves a request for voluntary admission by a respondent to a petition for involuntary admission, "the petitioner shall be notified of the request and of his or her right to object thereto, if the petitioner has requested such notification on that individual recipient." *Id.* When the facility director has approved a request for voluntary admission, the court hearing the petition for involuntary admission "may dismiss the pending proceedings, but shall consider any objection made by the petitioner or the State's Attorney and may require proof that such dismissal is in the best interest of the respondent and of the public." *Id.*[4] If a facility director approves voluntary admission and the court dismisses the petition for involuntary admission, the petitioner is to be informed of his right to receive notice of the recipient's discharge from the facility. *Id.*

¶ 26       This provision, allowing for a "request [for] admission as an informal or voluntary recipient at any time prior to an adjudication," was interpreted by the appellate court as requiring the circuit court to act on respondent's oral statement, in testimony, that he was requesting to become a voluntary patient. "Implicit in the language of the statute is that the trial court will actually consider and rule on the request, which did not occur in this case." 2012 IL App (5th) 110244, ¶ 26. The appellate court considered this oral request to be "the first hurdle of the statute" for respondent to obtain voluntary admission. *Id.* ¶ 24. The appellate court noted that section 3-801 states that the facility director "*shall*" approve the request unless the applicant lacks capacity or voluntary admission would be clinically inappropriate. (Emphasis added.) *Id.* ¶ 25. The appellate court interpreted this as mandatory language, requiring the court to strictly comply with a requirement for facility director approval. *Id.* The appellate court held a circuit court facing such a request should continue the proceedings to "allow the respondent to apply for voluntary admission and the facility director the opportunity to act upon it" (*id.* ¶ 35), but portions of the opinion also suggested that a circuit court might substantively rule on the request itself and grant a respondent voluntary admission. See, *e.g.*, *id.* ¶ 26 ("Implicit in the language of the statute is that the trial court will actually consider and rule on the request, which did not occur in this case."); *id.* ¶ 34 ("Since the trial court did not comment on whether voluntary commitment would be sufficient, did not have any information on whether the facility director would approve the request, and did not make any findings

---

[4]Amendments in 2011 require the court to also consider any objection by the respondent. 405 ILCS 5/3-801 (West 2012).

about whether the request would be in the best interest of the respondent and the public, the order fails to comply with the statute or the applicable case law.").

¶ 27 Before this court, respondent largely adopts these arguments but contends the question of whether a circuit court is to rule directly on a voluntary admission is not ripe, insofar as the facility director never approved or rejected an application from respondent. If the issue is found to be ripe, however, respondent argues that the circuit court still has concurrent jurisdiction over it, because it can consider "any objections to voluntary admissions" and "may require proof that such dismissal is in the best interest of the respondent and public." At oral argument, however, the respondent conceded the request under section 3-801 is not, in itself, a sufficient application for voluntary admission. Instead, a respondent must apply pursuant to sections 3-400 and 3-401, which provide the respondent with appropriate notice of his rights in voluntary admission. The in-court request, respondent contends, starts the process of voluntary admission, with the formal application under section 3-401 being the next step. Yet respondent also suggested at oral argument the circuit court should view respondent's request for voluntary admission as "confessing error," and argued that the placement of section 3-801 within the article on court hearings indicates a merger of processes for voluntary and involuntary admission.

¶ 28 Between the appellate court and respondent, then, there appear two distinct assertions: (1) that a respondent's in-court "request" for voluntary admission, delivered at a hearing for involuntary admission, presents an application for voluntary admission upon which the circuit court may rule directly; and (2) that where a respondent makes an in-court "request" for voluntary admission and the trial court does not rule on it directly, the trial court must *sua sponte* continue the proceedings to give the respondent an opportunity to file an application for voluntary admission with the facility director, or state why the request has been denied. We disagree with both assertions.

¶ 29 Looking to the plain language of section 3-801, only the facility director is tasked with evaluating a request for voluntary admission. The facility director "shall approve" such a request unless the facility director determines the respondent lacks capacity or that voluntary admission is clinically inappropriate. 405 ILCS 5/3-801 (West 2010). The facility director likewise "shall not find that voluntary admission is clinically inappropriate" without a documented history of illness showing the respondent will likely go without needed treatment following release from voluntary admission, and that an order for involuntary admission is necessary to ensure continuity of treatment. *Id.* The only guidance for a court in this section concerns what happens after a facility director has approved such a request: "[t]he court *may* dismiss the pending proceedings, but shall consider any objection made by either the petitioner or the State's Attorney and may require proof that such dismissal is in the best interest of the respondent and of the public." (Emphasis added.) *Id*. The circuit court's continued role—determining whether to dismiss the involuntary admission petition even after voluntary admission has been approved by a facility director—helps to illustrate that voluntary and involuntary admission are not two sides of the same coin. They are separate tracks to admission with distinct procedures and outcomes for the respondent. The most significant difference in outcomes is the voluntary recipient's right to request discharge from the facility; the facility director must either discharge the recipient within five business days or file a petition for involuntary admission. 405 ILCS 5/3-400 (West 2010).

¶ 30    Respondent has argued the circuit court has concurrent jurisdiction over requests for voluntary admission, because it retains jurisdiction to hear objections to dismissal and may require proof that dismissal is in the best interest of the respondent and public. This argument mistakes the target of those objections, which is dismissal of the involuntary admission petition, not the facility director's approval of voluntary admission. A facility director may approve voluntary admission for a respondent while a petition for involuntary admission is pending. The court need not dismiss the petition for involuntary admission. The circuit court in hearing the petition is not reviewing the facility director's decision.[5] Instead, the court is focusing on the best interest of the respondent and the public. The respondent's argument that his request for voluntary admission is analogous to a confession of error is unavailing. The court has no authority to grant or order voluntary admission. Voluntary and involuntary admission are separate tracks under the Mental Health Code. The placement of section 3-801 within the article for court hearings does not indicate a merger of the two tracks for admission; it indicates the period in which a respondent facing involuntary admission may still seek voluntary admission.

¶ 31    The assertion that a court may directly grant voluntary admission is also infirm in that it assumes a "request" under section 3-801 is a separate and alternative path to voluntary admission. Sections 3-400 and 3-401 describe the application, including who may seek voluntary admission, requirements of the application form including a statement of a voluntary patient's discharge rights, and how the facility director may evaluate an application. 405 ILCS 5/3-400, 3-401 (West 2010). These provisions describe the procedure in detail. Section 3-801, on the other hand, describes only the timing of a "request"—"any time prior to an adjudication" of involuntary admission—and narrow circumstances under which the facility director may deny such a request.

¶ 32    We do not believe the legislature intended to create by implication a separate track for voluntary admission. Section 3-801 lacks the procedure needed to make up an independent method of voluntary admission. Additionally, the facility director has far greater access to the patient's medical and mental health information than does the trial judge. Under the statute as written, the circuit court does not directly evaluate whether a respondent in a hearing for involuntary admission should instead be voluntarily admitted.

¶ 33    Turning to the second assertion, that a respondent's in-court request requires a court to *sua sponte* continue the proceedings so the respondent might apply for voluntary admission, we reject it as well. Applying such an assertion to respondent's case would first require finding that respondent's testimony, without any oral or written motion by his counsel, sufficed to bring the matter to the court's attention for adjudication. This mode of seeking relief from an evidentiary hearing already underway would be unusual. Courts rule on motions and matters properly addressed to the court for determination. Without a specific request to continue the cause, the court did not act improperly in proceeding to a final disposition.

¶ 34    The appellate court concluded respondent's statement in testimony was sufficient and reasoned the statute's use of "shall" issued a mandatory command to the trial court. 2012 IL App (5th) 110244, ¶ 25. However, we need not consider whether the words "shall approve" in

[5]This conclusion is bolstered by the fact that section 3-405 provides a separate process for administrative review of a mental health facility director's denial of voluntary admission. 405 ILCS 5/3-405 (West 2010).

section 3-801 are mandatory or directory language; this provision issues a command only to the facility director. Respondent further urges a broadly literal view of the words "at any time prior to an adjudication," to mean the circuit court must act on his verbal request at any time prior to entry of an order. The plain meaning of the provision allowing a request for voluntary admission "at any time prior to an adjudication" is straightforward: the filing of a petition for involuntary admission does not foreclose a patient's ability to seek voluntary admission instead, and a patient need not wait until a petition for involuntary admission has been resolved to apply.

¶ 35    Where a respondent to a petition for involuntary commitment would like to request voluntary admission instead, he may do so through a written application at any time prior to the commencement of a hearing on the petition for involuntary admission. Where the filing of a written application ahead of the hearing is impracticable, a respondent's counsel may request a continuance to file a written application for voluntary admission. The circuit court may, in its discretion, grant such a continuance. Where the respondent has filed an application still awaiting facility director review on the date of his hearing for involuntary admission, his counsel likewise may move for a continuance, which the court may grant in its discretion. In either situation, such a continuance is attributable to the respondent for purposes of the time limit on continuances under section 3-800. 405 ILCS 5/3-800 (West 2010) ("Such continuance shall not extend beyond 15 days except to the extent that continuances are requested by the respondent.").

¶ 36    Respondent additionally argues that, although his counsel did not move for a continuance, the State had a duty to do so on his behalf. Respondent relies on the duties for State's Attorneys under the statute, noting that State's Attorneys "shall ensure that petitions, reports and orders are properly prepared." 405 ILCS 5/3-101 (West 2010). Respondent thus contends the State had a duty to see that his request was properly addressed.

¶ 37    However, respondent's position would create significant conflicts of interest that would arise from requiring the State's Attorney to both present the case for involuntary admission and to seek a delay so that respondent might be voluntarily admitted instead. Respondent's argument would place the State in an untenable position in an adversarial proceeding. A respondent to a petition for involuntary admission is represented by his own counsel, who should move for the appropriate relief. 405 ILCS 5/3-805 (West 2010).

¶ 38    In the case at bar, there was no motion for a continuance by the respondent. No other party was obligated to move for a continuance, nor was the court obligated to grant one *sua sponte*. The circuit court accordingly did not err.

¶ 39                                    CONCLUSION

¶ 40    The Mental Health Code does not vest the circuit court with authority to rule for or against voluntary admission to a mental health facility, based on an in-court request for voluntary admission during a hearing for involuntary admission. The Mental Health Code similarly does not require the circuit court to *sua sponte* continue a proceeding for involuntary admission upon such a request. A circuit court may, in its discretion, grant a continuance to file an application for voluntary admission, upon a motion by respondent's counsel.

¶ 41        Appellate court judgment reversed.
¶ 42        Circuit court judgment affirmed.

¶ 43        JUSTICE BURKE, dissenting:
¶ 44        The majority holds that a circuit court is not required to take any action whatsoever when a respondent testifies under oath during an involuntary admission hearing that he wishes to pursue voluntary admission. This holding fails to protect the substantial and fundamental interests at stake for a respondent subjected to involuntary admission and is at odds with the court's duty to protect the interests of the mentally ill. I therefore respectfully dissent.

¶ 45                                                    I
¶ 46        The State filed a petition to continue the involuntary commitment of the respondent, Lance H. The petition alleged that respondent suffered from serious mental illness, that he was reasonably expected to place himself or others at risk of physical harm unless treated, and that he was unable to provide for his basic physical needs. The petition proceeded to a hearing.
¶ 47        At the hearing, respondent testified, among other things, that he told his social worker that he wanted to become a voluntary patient but the social worker had disregarded the request. Respondent further testified that when he met with his attorney on the morning of the hearing, he told counsel he would like to become a voluntary patient. Counsel then inquired of respondent:

        "Q. *** And pursuant to our conversation this morning, you are requesting to become a voluntary patient; is that correct?
        A. Yes, sir."

¶ 48        The circuit court did not acknowledge this testimony or take any action. At the close of evidence, the court granted the State's petition for involuntary admission. Respondent appealed. The appellate court reversed, holding that the circuit court should have taken action once respondent testified that he wished to pursue voluntary admission.

¶ 49                                                   II
¶ 50        The majority reverses the appellate court and affirms the judgment of the circuit court. The majority rejects two possible courses of action the circuit court could have taken in light of respondent's testimony that he wished to pursue voluntary admission. First, the majority holds that the circuit court was not required to rule on respondent's request for voluntary admission. This is so, the majority explains, because only a facility director is tasked with evaluating such requests. *Supra* ¶¶ 30-33. Second, the majority holds that the circuit court was not required "to *sua sponte* continue the proceedings" so that the respondent could properly apply for voluntary admission. *Supra* ¶ 33. The majority notes that no "specific request" was made by respondent's counsel to continue the cause and concludes that, in the absence of such a request, the circuit court "did not act improperly in proceeding to a final disposition." *Id*.
¶ 51        I agree with the majority that the circuit court could not, itself, rule on respondent's request for voluntary admission and that the circuit court did not err when it failed to *sua sponte* order a continuance. I disagree, however, with the majority's unstated assumption that there were no other options available to the circuit court. There was at least one other: the circuit court could

simply have asked counsel whether, in light of his client's testimony, he intended to pursue a voluntary admission.

¶ 52    "The fundamental liberty interest of the person facing commitment is self-evident." *In re Stephenson*, 67 Ill. 2d 544, 554 (1977). Further, as the United States Supreme Court has observed:

> "The loss of liberty produced by an involuntary commitment is more than a loss of freedom from confinement. It is indisputable that commitment to a mental hospital 'can engender adverse social consequences to the individual' and that '[w]hether we label this phenomena "stigma" or choose to call it something else ... we recognize that it can occur and that it can have a very significant impact on the individual.' " *Vitek v. Jones*, 445 U.S. 480, 492 (1980).

Because of the stigma associated with an involuntary admission and the therapeutic benefits that flow from undertaking treatment voluntarily, voluntary admissions are to be encouraged. See, *e.g.*, *In re Splett*, 143 Ill. 2d 225, 233-34 (1991).

¶ 53    Our Mental Health and Developmental Disabilities Code (405 ILCS 5/1-100 *et seq.* (West 2008)) reflects concern for these interests and "represents a serious attempt to provide beneficial treatment and care for the mentally ill with the minimum ostracism and confinement consistent with protection of the public." *Stephenson*, 67 Ill. 2d at 554. The procedures codified in the Code are meant to "ensure that the mental health system does not become an oppressive tool rather than a means to serve the society in which we live." *In re Phillip E.*, 385 Ill. App. 3d 278, 284 (2008). Thus, public policy in Illinois favors the protection of the mentally ill. *American Federation of State, County & Municipal Employees v. Department of Central Management Services*, 173 Ill. 2d 299, 338 (1996) (Harrison, J., dissenting).

¶ 54    For this reason, courts have a special duty to protect the interests of a disabled person who is a party to judicial proceedings. *Valdovinos v. Luna-Manalac Medical Center, Ltd.*, 328 Ill. App. 3d 255, 272 (2002). As we have stated, courts should "be ever vigilant to protect against abuses of power and preserve the fundamental liberty interests of individuals subjected to involuntary-admission proceedings." *In re Andrew B.*, 237 Ill. 2d 340, 354-55 (2010).

¶ 55    Given the above principles and considerations, and given the ease of simply asking counsel whether respondent wished to file an application for voluntary admission and the obvious necessity for the question in light of respondent's testimony, I would hold that the circuit court erred when it did nothing in response to respondent's request for voluntary admission. A simple question to counsel would have clarified respondent's position, would have avoided further litigation and would have protected respondent's interests.

¶ 56    This is a moot case. The reason for addressing the merits is to provide guidance to our circuit courts in the event that what happened here happens again. The majority's holding that a circuit court need take no action at all, even in the face of an explicit statement by a respondent that he wishes to seek voluntary admission, provides the wrong guidance. I therefore respectfully dissent.